**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**

KELDY GONZALES DE ZUNIGA
ERICK ZUNIGA GONZALES, and
MINO ZUNIGA GONZALES,

                Plaintiff,

        v.                          No. 2:23-CV-162 MV-JHR

THE UNITED STATES OF
AMERICA,
                Defendant.

## <u>DEFENDANT'S MOTION TO DISMISS</u>

Defendant United States of America respectfully moves to dismiss this action for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1) and for failure to state a claim on which relief may be granted under Rule 12(b)(6).

Plaintiffs Keldy Gonzales De Zuniga, Erick Zuniga Gonzales and Mino Zuniga Gonzales bring this action pursuant to the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b)(1), 2671-80. The Complaint alleges that Plaintiffs Erick and Mino were separated from their mother, Ms. Gonzales De Zuniga, on September 19, 2017, following their unlawful entry into the United States.

The United States has denounced the prior practice of separating children from their families at the United States-Mexico border and committed itself to family reunification. *See* Exec. Order No. 14,011, 86 Fed. Reg. 8273 (Feb. 2, 2021) ("Establishment of Interagency Task Force on the Reunification of Families"). Nevertheless, the Court should dismiss this action for lack of subject matter jurisdiction because the United States has not waived its sovereign immunity for Plaintiffs' claims. In addition, Plaintiffs fail to state a claim upon which relief can

be granted for the tort of intentional infliction of emotional distress.

Pursuant to Local rule 7.1, Defendant notified Plaintiffs' counsel of this Motion, and Plaintiffs are opposed.

## BACKGROUND

**A.    Legal Framework for Noncitizens Entering the United States Unlawfully**

Under the Immigration and Nationality Act ("INA"), any noncitizen present in the United States without being admitted or paroled is inadmissible and subject to removal. *See* 8 U.S.C. §§ 1182(a)(6)(A)(i), 1225(b)(2)(A), 1229a. Such individuals may also be subject to prosecution for criminal immigration violations, including entering the United States "at any time or place other than as designated by immigration officers." 8 U.S.C § 1325(a)(1).

Noncitizens present in the United States without being admitted are considered "applicant[s] for admission" and are "inspected by immigration officers" to assess the validity of their claims. *See* 8 U.S.C. §§ 1225(a)(1), (a)(3), (b).  Individuals arriving in the United States who, following inspection, are deemed inadmissible, are subject to removal from the United States and, as appropriate, detention pending such removal. *See id.* §§ 1225(b); 1226; 1357. These provisions generally apply to both adults and children.  The Department of Homeland Security ("DHS") may in its "discretion" grant parole and release such individuals only under prescribed circumstances on a "case-by-case basis." 8 U.S.C. § 1182(d)(5); 8 C.F.R. §§ 235.3(b)(2)(iii) and (b)(4)(ii). The federal government possesses statutory authority to "arrange for appropriate places of detention for [noncitizens] detained pending removal or a decision on removal." *See* 8 U.S.C. § 1231(g)(1).

**B.    Legal Framework for Immigration Custody and Release of Minors**

Federal law authorizes the United States to provide for the custody and care of noncitizen

unaccompanied children in the United States. *See* 6 U.S.C. § 279; 8 U.S.C. § 1232. Specifically, the ORR (which is within the Department of Health and Human Services) is charged with "the care and placement" of unaccompanied alien children ("UACs") "who are in Federal custody by reason of their immigration status." 6 U.S.C. § 279(a); *see also* 8 U.S.C. § 1232(b)(1). A UAC is a person: (1) who "has no lawful immigration status in the United States"; (2) who "has not attained 18 years of age"; and (3) "with respect to whom . . . there is no parent or legal guardian in the United States; or . . . no parent or legal guardian in the United States is available to provide care and physical custody." 6 U.S.C. § 279(g)(2).

Under the Trafficking Victims Protection Reauthorization Act of 2008 ("TVPRA"), "[e]xcept in the case of exceptional circumstances, any department or agency . . . shall transfer the custody of such child to [ORR] not later than 72 hours after determining that such child is an unaccompanied alien child]." 8 U.S.C. § 1232(b)(3). ORR must place UACs "in the least restrictive setting that is in the best interest of the child." *Id.* § 1232(c)(2)(A). However, ORR "shall not release such children upon their own recognizance." 6 U.S.C. § 279(2)(B). Rather, once in ORR custody, there are detailed statutory and regulatory provisions that must be followed before the child is released to an approved sponsor. *See* 8 U.S.C. § 1232(c)(3). Congress requires that "an unaccompanied alien child may not be placed with a person … unless the Secretary of Health and Human Services makes a determination that the proposed custodian is capable of providing for the child's physical and mental well-being" and that "[s]uch determination shall, at a minimum, include verification of the custodian's identity and relationship to the child, if any, as well as an independent finding that the individual has not engaged in any activity that would indicate a potential risk to the child." *Id.* § 1232(c)(3)(A).

In addition to this legal framework, the federal government entered into a consent decree

known as the *Flores* Agreement,[1] enforced in the Central District of California, that "sets out nationwide policy for the detention, release, and treatment of minors in the custody of the [immigration authorities]." *Flores v. Lynch*, 828 F.3d 898, 901 (9th Cir. 2016) (citing *Flores* Agreement ¶ 9). Under the *Flores* Agreement, DHS must transfer minors who cannot be released from custody to a non-secure, licensed facility expeditiously.  *Id*. at 902-03 (quoting *Flores* Agreement ¶ 12(A)).  The government must also "make and record the prompt and continuous efforts on its part toward … release of the minor." *Flores v. Rosen*, 984 F.3d 720, 738 (9th Cir. 2020) (quoting *Flores* Agreement ¶ 14).

The *Flores* agreements applies only to minors.  It "does not address . . . the housing of family units and the scope of parental rights for adults apprehended with their children," and it "does not contemplate releasing a child to a parent who remains in custody, because that would not be a 'release.'" *Flores*, 828 F.3d at 906; *see also United States v. Dominguez-Portillo*, No. 17-MJ-4409, 2018 WL 315759, at *9 (W.D. Tex. Jan. 5, 2018) (noting that the *Flores* Agreement "does not provide that parents are entitled to care for their children if they were simultaneously arrested by immigration authorities"). Nor does the *Flores* Agreement provide any rights to adult detainees, including any right to release. *Flores*, 828 F.3d at 908; *see also Dominguez-Portillo*, 2018 WL 315759, at *14-15; *Bunikyte v. Chertoff*, No. 07-164, 2007 WL 1074070, at *16 (W.D. Tex. Apr. 9, 2007). While the *Flores* Agreement gives preference to the releasing of minors to a parent, this "does not mean that the government must also make a parent available; it simply means that, if available, a parent is the first choice." *Flores*, 828 F.3d at 908.

---

[1] *See Flores v. Sessions*, No. 85-cv-4544 (C.D. Cal. Feb. 2, 2015) (Doc. 101).

**C.       Prior Executive Branch Directives Regarding Immigration Enforcement**

In January 2017, then-President Trump issued Executive Order No. 13767 ("EO 13767")

stating that "[i]t is the policy of the executive branch to . . . detain individuals apprehended on

suspicion of violating Federal or State law, including Federal immigration law, pending further

proceedings regarding those violations." Exec. Order No. 13,767 § 2(b), 82 Fed. Reg. 8793 (Jan.

3, 2017). EO 13767 directed DHS to "ensure the detention of [noncitizens] apprehended for

violations of immigration law pending the outcome of their removal proceedings or their

removal from the country to the extent permitted by law," and to exercise its parole authority

"only on a case-by-case basis in accordance with the plain language of the statute . . . and in all

circumstances only when an individual demonstrates urgent humanitarian reasons or a significant

public benefit derived from such parole." *Id*. §§ 6, 11(d).

On August 4, 2017, the El Paso Sector of the U.S. Border Patrol, which oversees stations

in parts of New Mexico and Texas, issued email guidance explaining that the U.S. Attorney's

Office for the District of New Mexico would accept certain adults for prosecution of violations

of 8 U.S.C. § 1325. The adults who could be prosecuted under this guidance included those who

had been traveling with minor children who were at least 10 years old.

On April 11, 2017, then-Attorney General Sessions issued a memorandum to all federal

prosecutors regarding a renewed commitment to criminal immigration enforcement. *See*

Memorandum from the Attorney General to All Federal Prosecutors on Renewed Commitment

to Criminal Immigration Enforcement (Apr. 11, 2017).[2] He requested that federal law

enforcement prioritize the prosecution of several immigration offenses, including illegal entry

---

[2] *Available at* https://www.justice.gov/opa/press-release/file/956841/download (last visited June 16, 2023).

5

under 8 U.S.C. § 1325, noting that "[c]onsistent and vigorous enforcement of key laws will disrupt organizations and deter unlawful conduct." *Id*. at 1. Moreover, Attorney General Sessions requested that U.S. Attorneys' offices along the border "work with the U.S. Department of Homeland Security and any other appropriate agency to develop a set of guidelines for prosecuting such violations." *Id*. at 1-2.

**D.    Allegations in Plaintiffs' Complaint[3]**

Plaintiffs allege that in September 2017, Erick and Mino Zuniga Gonzales were 13 and 15 years of age, respectively.  Plaintiffs were all from Juticalpa, Olancho, Honduras.  All three crossed into the United States at or near Columbus, New Mexico. Doc. 1 ¶¶ 63-65. They turned themselves in to Customs and Border Protection ("CBP") officials and were transported to the Deming CBP station, where they spent a night together. *Id*. ¶¶ 52-54.

On September 19, 2017, Erick and Mino were separated from their mother, Plaintiff Keldy Gonzales De Zuniga. After the separation, agents transferred Ms. Gonzales De Zuniga to the custody of the U.S. Marshal's Service ("USMS"), which transported her to a detention center in Deming. She was held in USMS custody from September 22 until on or immediately after September 27, 2017, when she pleaded guilty of violating 8 U.S.C. § 1325 and was sentenced to time served.  *Id*. ¶¶ 61-63. After pleading guilty, she was transferred back to ICE custody. *Id*. ¶ 63. She was detained at the El Paso Service Processing Center, where she remained until she was deported in January 2019. *Id*.

Erick and Mino were designated as UACs and transferred to a center for single children elsewhere in Texas. They were released in October 2017 to Ms. Gonzales's sister. *Id*. ¶ 70. Erick

---

[3] Defendant restates Plaintiffs' factual allegations from the Complaint for purposes of this Motion only, without any admission or concession as to their accuracy.

and Mino continued to live with their aunt until their mother was able to join them in May 2021. *Id*. ¶ 73.

Plaintiffs allege that on December 23, 2021, they submitted their administrative claim to DHS, U.S. Immigration and Customs Enforcement ("ICE"), U.S. Customs and Border Protection ("CBP"), and HHS. They filed their complaint in this Court on February 23, 2023. Plaintiffs assert claims for intentional infliction of emotional distress ("IIED") and negligence. *Id.* ¶¶ 88-98.

## LEGAL STANDARD

Rule 12(b)(1) allows a party to move to dismiss a complaint for lack of subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). The court must consider the threshold issue of jurisdiction before addressing a case's merits. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998). On a motion to dismiss, the plaintiff bears the burden of establishing subject-matter jurisdiction. *Montoya v. Chao*, 296 F.3d 952, 955 (10th Cir. 2002); *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). The court may look beyond the complaint's allegations to determine whether subject matter jurisdiction exists. *New Mexicans for Bill Richardson v. Gonzales*, 64 F.3d 1495, 1499 (10th Cir. 1995).

Rule 12(b)(6) allows a party to move to dismiss a complaint for failure to state a claim. To survive dismissal, a complaint must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The factual allegations "must be enough to raise a right to relief above the speculative level" and must be sufficient to "state a claim to relief that is plausible on its face." *Id.* at 555, 570. A claim has facial plausibility "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."

**ARGUMENT**

**I.     The Court Lacks Subject Matter Jurisdiction Under the FTCA.**

The federal government is immune from liability absent its consent, and the terms of that consent define a court's jurisdiction to entertain a suit against the government. *United States v. Mitchell*, 445 U.S. 535, 538 (1980). "Absent a waiver, sovereign immunity shields the Federal Government and its agencies from suit." *FDIC v. Meyer*, 510 U.S. 471, 475 (1994). The FTCA "waive[s] the sovereign immunity of the United States for certain torts committed by federal employees acting within the scope of their employment." *Brownback v. King*, 141 S. Ct. 740, 746 (2021) (internal quotation marks omitted).

An FTCA claim "is actionable if it alleges the six elements of [28 U.S.C.] § 1346(b), which require that the claim be:

> "[1] against the United States, [2] for money damages, . . . [3] for injury or loss of property, or personal injury or death [4] caused by the negligent or wrongful act or omission of any employee of the Government [5] while acting within the scope of his office or employment, [6] under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred."

*Id*. (quoting 28 U.S.C. § 1346(b) (internal quotation marks omitted; alterations in original)). Because "in the unique context of the FTCA, all elements of a meritorious claim are also jurisdictional . . . a plaintiff must plausibly allege all six FTCA elements not only to state a claim upon which relief can be granted but also for a court to have subject-matter jurisdiction over the claim." *Id*. at 749. Accordingly, an "FTCA plaintiff[] bears the burden of proof to establish that the court possesses subject-matter jurisdiction based upon analogous [state law] private liability." *Pappas v. United States*, 617 F. App'x 879, 882 (10th Cir. 2015).

"The liability of the United States under the FTCA is subject to the various exceptions contained in [28 U.S.C.] § 2680," including the "discretionary function" exception and the

exception for actions taken while reasonably executing the law set forth in 28 U.S.C. § 2680(a). *United States v. Gaubert*, 499 U.S. 315, 322 (1991). The plaintiff bears the burden of alleging facts that place her claims facially outside these exceptions. *Daigle v. Shell Oil Co*., 972 F.2d 1527, 1542 & n.11 (10th Cir. 1992).

Here, Plaintiffs have not met their burden to plausibly allege facts showing that there is a private person analog for their claims or that their claims fall outside either the discretionary function exception or the exception for actions taken while reasonably executing the law in the FTCA. Accordingly, the Court should dismiss their claims for lack of subject matter jurisdiction.

### A.      The Discretionary Function Exception Bars Plaintiffs' Claims.

The discretionary function exception to the FTCA preserves the United States' sovereign immunity for "[a]ny claim . . . based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused." 28 U.S.C. § 2680(a). The discretionary function exception "marks the boundary between Congress' willingness to impose tort liability upon the United States and its desire to protect certain governmental activities from exposure to suit by private individuals." *United States v. S.A. Empresa de Viacao Aerea Rio Grandense (Varig Airlines)*, 467 U.S. 797, 808 (1984). Plaintiffs bear the burden of showing that the FTCA's discretionary function exception does not apply. *See Hardscrabble Ranch, LLC v. United States*, 840 F.3d 1216, 1220 (10th Cir. 2016). "To avoid dismissal of an FTCA claim under the discretionary-function exception, a plaintiff must allege facts that place its claim facially outside the exception." *Franklin Sav. Corp. v. United States*, 180 F.3d 1124, 1130 (10th Cir. 1999).

To determine whether the challenged conduct falls within the discretionary function exception, courts conduct a two-pronged analysis, known as the *Berkovitz* test, determining: (1)

"whether the challenged conduct 'involves an element of judgment or choice,'" rather than "'a federal statute, regulation, or policy that specifically prescribes a course of action for an employee to follow'"; and if so, (2) "'whether that judgment is the kind that the discretionary function exception was designed to shield,'" *i.e.*, a decision "based on considerations of public policy." *Kiehn v. United States*, 984 F.2d 1100, 1102-03 (10th Cir. 1993) (quoting *Berkovitz ex rel. Berkovitz v. United States*, 486 U.S. 531, 536 (1988) (alteration omitted)). "If the discretionary function exception applies to the challenged governmental conduct, the United States retains its sovereign immunity and the district court lacks subject matter jurisdiction to hear the suit." *Domme v. United States*, 61 F.3d 787, 789 (10th Cir. 1995). Both requirements are met here.

      1.      **The Decisions to Prosecute Plaintiff Gonzales de Zuniga, Detain Her in Secure Detention Facilities, and Designate Her Children as UACs Were Discretionary.**

Plaintiffs' claims based on the decisions to prosecute Plaintiff Gonzales de Zuniga, which necessarily involved her transfer to criminal custody, and to detain her pending immigration proceedings, which resulted in her separation from Erick and Mino, involved an element of judgment or choice. Plaintiffs do not contest that Border Patrol agents lawfully apprehended them after crossing the border illegally. Nor do Plaintiffs contest that the government had discretion to refer Plaintiff Gonzales de Zuniga for prosecution for illegal entry under 8 U.S.C. § 1325. Nor do they contest that the government had discretion to hold her in secure detention pending immigration proceedings. And under these circumstances, the government concluded Erick and Mino were UACs within the meaning of the TVPRA.

These decisions, which resulted in the separation of Ms. Gonzales de Zuniga from Erick and Mino, are quintessentially discretionary. The discretionary function exception applies to decisions relating to the apprehension of noncitizens for unlawful entry and criminal prosecution.

Indeed, "[d]iscretion lies at the heart of the DHS law enforcement function." *Blanco Ayala v. United States*, 982 F.3d 209, 215 (4th Cir. 2020).

As the Supreme Court has stated, "the Attorney General and United States Attorneys retain broad discretion to enforce the Nation's criminal laws." *United States v. Armstrong*, 517 U.S. 456, 464 (1996) (internal quotation omitted). Indeed, "[t]he Supreme Court has long recognized that the 'Executive Branch has exclusive authority and absolute discretion to decide whether to prosecute a case.'" *In re Sealed Case*, 829 F.2d 50, 63 (D.C. Cir. 1987) (quoting *United States v. Nixon*, 418 U.S. 683, 693 (1974)); *see also Smith v. United States*, 375 F.2d 243, 247–48 (5th Cir. 1967) ("as an incident of the constitutional separation of powers, … the courts are not to interfere with the free exercise of the discretionary powers of the attorneys of the United States in their control over criminal prosecutions"); *Gray v. Bell*, 712 F.2d 490, 513 (D.C. Cir. 1983) (prosecutorial decisions are "quintessentially" discretionary).

ICE's decisions regarding detention pending removal proceedings also fall within the discretionary function exception.  The federal government has the express statutory authority to "arrange for appropriate places of detention for aliens detained pending removal or a decision on removal."  8 U.S.C. § 1231(g)(1).  The Supreme Court has recognized "detention during deportation proceedings as a constitutionally valid aspect of the deportation process."  *Demore v. Kim*, 538 U.S. 510, 523 (2003).  "Congress has placed the responsibility of determining where aliens are detained within the discretion of the [Secretary of Homeland Security]."  *Comm. of Cent. Am. Refugees v. I.N.S.*, 795 F.2d 1434, 1440 (9th Cir. 1986) (emphasis added)[4]; *see also Van Dinh v. Reno*, 197 F.3d 427, 433 (10th Cir. 1999) (holding that the "[Secretary's]

---

[4] Following the Homeland Security Act of 2002, many references in the Immigration and Nationality Act to the "Attorney General" are read to mean the Secretary of the Department of Homeland Security. *See Clark v. Suarez Martinez*, 543 U.S. 371, 374 n.1 (2005).

discretionary power to transfer [noncitizens] from one locale to another, as she deems appropriate, arises from" statute); *Mirmehdi v. United States*, 662 F.3d 1073, 1081-82 (9th Cir. 2011) ("Because the decision to detain an alien pending resolution of immigration proceedings is explicitly committed to the discretion of the [Secretary] and implicates issues of foreign policy, it falls within this [FTCA] exception."); *Gandarillas-Zambrana v. Bd. of Immigr. Appeals*, 44 F.3d 1251, 1256 (4th Cir. 1995) ("The INS necessarily has the authority to determine the location of [a noncitizen] in deportation proceedings . . . and therefore, to transfer [noncitizens] from one detention center to another."). This discretion necessarily applies to decisions regarding with whom noncitizens are detained, whether adults and minors can be detained in the same facility, and whether to detain family members together. *See Peña Arita v. United States*, 470 F. Supp. 3d 663, 691-92 (S.D. Tex. 2020) (decisions by DHS to separate family members protected by the discretionary function exception).

Moreover, the determination whether and when a parent is "available to provide care and physical custody," and thus whether a child is a UAC, is also a discretionary decision. *See D.B. v. Poston*, 119 F. Supp. 3d 472, 482-83 (E.D. Va. 2015) ("Federal agencies are afforded discretion under the statutory scheme when classifying juveniles as unaccompanied alien children."), *aff'd in part and vacated in part*, 826 F.3d 721 (4th Cir. 2016).

### 2. Decisions Relating to Immigration Detention, Prosecution, and Placement of Unaccompanied Children Are Grounded in Public Policy.

The second step of the *Berkovitz* test is also satisfied because the actions at issue here were all grounded in public policy considerations. *See also Ball v. United States*, 967 F.3d 1072, 1079 (10th Cir. 2020) ("We *presume* that a government agency's acts are grounded in policy when no statute, regulation, or policy sets forth a required course of conduct; the challenger must allege facts showing otherwise." (emphasis in original)).

The decision to prosecute Plaintiff Gonzales de Zuniga was grounded in public policy considerations.  Because prosecutorial decisions are "exclusively within the province of the executive branch," they are "exactly the type of conduct the discretionary function exception was intended to protect from judicial branch interference." *Hobdy v. United States*, 968 F.2d 20 (10th Cir. 1992) (Table), 1992 WL 149871, at *2 (10th Cir. June 26, 1992) (internal quotation marks omitted); *see also Gen. Dynamics Corp. v. United States*, 139 F.3d 1280, 1283 (9th Cir. 1998) ("The decision whether or not to prosecute a given individual is a discretionary function for which the United States is immune from liability" under the FTCA).

DHS's enforcement of immigration law is particularly grounded in considerations of public policy. In exercising this function, DHS agents must "make all the classic judgment calls the discretionary function exception was meant to exempt from tort liability." *Blanco Ayala*, 982 F.3d at 215. Moreover, immigration policy involves "vital national interests in law enforcement at the borders," and "DHS officers' decisions in investigating and responding to potential violations of immigration law are infused with public policy considerations." *Id.* at 217.  *See also S.E.B.M. v. United States*, --- F.Supp.3d ----, 2023 WL 2383784, at *15 (D.N.M. Mar. 6, 2023) (FTCA suit based on family separation was shielded by discretionary function exception because the decision to prosecute the father "was a discretionary decision that violated no federal law," and the decision to prosecute, detain, and deport the father did not violate the child's constitutional rights (citing *Delgado v. Immigr. & Nationalization Servs.*, 637 F.2d 762, 764 (10th Cir. 1980)); *id.* ("[T]he government has an inherently strong interest in exercising prosecutorial discretion to further its policy goals. This interest is even greater in the arena of immigration law because immigration policy generally has significant effects on the nation as a whole and the executive branch has the special responsibility to enforce it." (citation omitted));

*United States v. Flores-Montano*, 541 U.S. 149, 153 (2004) ("It is axiomatic that the United States, as sovereign, has the inherent authority to protect, and a paramount interest in protecting, its territorial integrity.").  Moreover, whether a parent is "available to provide care and physical custody" within the meaning of the TVPRA is a policy question vested in federal officials.  *Baie v. Sec'y of Def.*, 784 F.2d 1375, 1377 (9th Cir. 1986) ("interpretation of the statute is a plainly discretionary administrative act the 'nature and quality' of which Congress intended to shield from liability under the FTCA.").

Accordingly, the facts alleged by Plaintiffs fall short of showing that the actions taken by the government are not "susceptible to policy analysis." *Gaubert*, 499 U.S. at 325. Moreover, "[a]pplication of *Berkovitz*'s second prong does not require proof of the thought processes of the pertinent decisionmakers." *Elder v. United States*, 312 F.3d 1172, 1182 (9th Cir. 2002). Indeed, under the second prong, "courts should not inquire into the actual state of mind or decisionmaking process of federal officials charged with performing discretionary functions." *Franklin Sav. Corp.*, 180 F.3d at 1135; *see also Merando v. United States*, 517 F.3d 160, 164 (3d Cir. 2008) ("The [discretionary function] exception's purpose is to prevent judicial second-guessing of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort." (internal quotation marks omitted)).

### 3.  Plaintiffs Have Not Alleged the Violation of Any Mandatory, Specific Directive.

To overcome application of the discretionary function exception, Plaintiffs must "identify what mandatory statutes, regulations or directives have allegedly been violated with specificity." *Hammonds v. United States*, Civ. No. 16-1230 GBW/KRS, 2018 WL 1399183, at *5 (D.N.M. Mar. 19, 2018) (citing *Daigle*, 972 F.2d at 1539-40). Here, Plaintiffs allege the violation of supposed directives, but none negates application of the discretionary function exception.

<u>**The U.S. Constitution:**</u> Plaintiffs contend that their "detention and separation violated

14

the United States Constitution's clearly established due process rights governing immigration detainees and the constitutional right to family integrity," and therefore that "this tortious conduct is not subject to the FTCA's discretionary function exception." Doc. 1 ¶¶ 50-51. This allegation is insufficient to defeat application of the discretionary function exception.

As an initial matter, the Tenth Circuit has never held that the discretionary function exception applies only when the underlying conduct was constitutional. As Judge Ebel has noted, "[t]here is nothing in the language of the discretionary function exception that suggests that that is the relevant inquiry." *Ramirez v. Reddish*, No. 2:18-CV-00176-DME-MEH, 2020 WL 1955366, at *28 (D. Utah Apr. 23, 2020); *see also Linder v. United States*, 937 F.3d 1087, 1090 (7th Cir. 2019) ("[T]he theme that 'no one has discretion to violate the Constitution' has nothing to do with the Federal Tort Claims Act, which does not apply to constitutional violations."). "Moreover, such a determination of whether the employee acted unconstitutionally in a given case would typically require a full-blown examination of the federal employee's conduct that the discretionary function exception is designed to avoid." *Ramirez*, 2020 WL 1955366, at *29 (noting that determining whether a search or seizure was objectively unreasonable "will typically require a lengthy and detailed analysis" that, in the context of a waiver of sovereign immunity, "would make no sense whatsoever").

Moreover, the Supreme Court has long recognized that conduct may be discretionary even if it is later determined to have violated the Constitution. The common law doctrine of official immunity thus applies to the exercise of discretionary functions even when the conduct violated the Constitution, so long as the constitutional right was not defined with sufficient specificity that the official should have known the act was prohibited. *See Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982) ("[G]overnment officials performing discretionary functions[]

generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."); *see also Wilson v. Layne*, 526 U.S. 603, 614–15 (1999) (applying the "discretionary function[]" formulation and holding that officers were entitled to qualified immunity because, although their conduct violated the Fourth Amendment, the law was not clearly established at the time).

Thus, when the Supreme Court in *Berkovitz* held that a federal mandate must "specifically prescribe[]" conduct in order to overcome the discretionary function exception, it referred to official immunity precedent, underscoring that the two standards operate in tandem. 486 U.S. at 536 (citing *Westfall v. Erwin*, 484 U.S. 292, 296–97 (1988)). Accordingly, the discretionary function exception is not made inapplicable by every allegation of unlawful or unconstitutional conduct, but only by a showing that the government official's discretion was cabined by a specific, clearly established directive accompanied by plausible assertions that the specific directive was violated.

Indeed, even before it specifically addressed the qualified immunity standards applicable to federal employees, the Supreme Court in *Butz v. Economou*, 438 U.S. 478 (1978), explicitly recognized that the discretionary function exception would apply even if the alleged conduct might later be held unconstitutional. The Court in that case held that officials sued for violations of constitutional rights were entitled to qualified, but not absolute immunity. The Court explained that were it otherwise, the recently recognized *Bivens* remedy would be illusory, and, as relevant here, it noted that "no compensation would be available from the Government, for the Tort Claims Act prohibits recovery for injuries stemming from discretionary acts, even when that discretion has been abused." *Id.* at 505. *Butz* and subsequent decisions thus leave no doubt that

conduct that violates the Constitution may constitute the type of abuse of discretion that falls within the scope of the discretionary function exception.

Accordingly, even assuming, *arguendo*, that a constitutional violation occurred,[5] that would not take Plaintiffs' FTCA claims outside the reach of the discretionary function exception.[6] *See Awad v. United States*, 807 F. App'x 876, 881 (10th Cir. 2020) ("Even if they were mistaken, the DEA agents made a discretionary determination that probable cause to arrest Awad existed."); *Ramirez*, 2020 WL 1955366, at *33 ("The Task Force members might have abused their discretion by acting unconstitutionally but that does not negate the fact that the manner in which an arrest warrant is executed involves a great deal of discretion. 28 U.S.C. § 2680(a) specifically does not limit the assertion of sovereign immunity only to acts that are constitutional.").

**Federal regulations:** Plaintiffs allege without elaboration that United States officers violated a regulation, 8 C.F.R. § 1236.3. Doc. 1 ¶ 51. But they do not explain how this regulation was allegedly violated. At any rate, this regulation is discretionary, not mandatory: it provides that "simultaneous release of the juvenile and the [juvenile's] parent, legal guardian, or adult

---

[5] The existence of a substantive due process right to family integrity in the immigration context is not supported by precedent in this Circuit. *See, e.g.*, *Cervantes v. INS*, 510 F.2d 89, 92 (10th Cir. 1975) ("The incidental impact on [noncitizens'] minor children caused by the enforcement of duly-enacted conditions on [noncitizens'] entrance and residence does not create constitutional problems."); *see also Reyna as next friend of J.F.G. v. Hott*, 921 F.3d 204, 210 (4th Cir. 2019) ("On the merits, we, like the district court, have been unable to find a substantive due process right to family unity in the context of immigration detention pending removal.").

[6] Other Courts of Appeal have held that the discretionary function exception does not immunize a government action alleged to be unconstitutional. *See, e.g.*, *Loumiet v. United States*, 828 F.3d 936, 944 (D.C. Cir. 2016) (citing cases). However, the Tenth Circuit has not adopted this reasoning. *See Ramirez*, 2020 WL 1955366, at *29 (noting that Tenth Circuit precedent does not require a constitutional analysis to determine whether the discretionary function exception applies); *see also Martinez v. United States*, 822 F. App'x 671, 678 (10th Cir. 2020) (noting that the Tenth Circuit "has not addressed this issue").

relative shall be evaluated on a discretionary case-by-case basis." *Id.* § 1236.3(b)(2). And the regulation also expressly recognizes that there may be "cases where the parent . . . is in Service detention" and provides for release to other individuals in those circumstances.  *Id.* § 1236.3(b)(3). Thus, this regulation does not create a mandatory duty to keep a family together. Plaintiffs therefore cannot show that this regulation is a source of a mandatory duty.

***Flores* Agreement:** Plaintiffs also claim that the United States violated the *Flores* Agreement. Doc. 1 ¶ 51. However, they again do not explain how the Agreement was violated. Nor do the Complaint's allegations establish such a violation: "The Settlement does not contemplate releasing a child to a parent who remains in custody, because that would not be a 'release.'" *Flores*, 828 F.3d at 906; *see also id*. at 909 (noting that the *Flores* Agreement "provides no affirmative release rights for parents"). Moreover, while the *Flores* Agreement "grants class members a right to preferential release to a parent over others," that "does not mean that the government must also make a parent available; it simply means that, if available, a parent is the first choice." *Id*. at 908. In addition, "[n]either *Flores* nor any federal rule or statute mandates the simultaneous release of parents and children from detention." *Bunikyte*, 2007 WL 1074070, at *16; *see also United States v. Vasquez-Hernandez*, 314 F. Supp. 3d 744 (W.D. Tex. 2018), *aff'd*, 924 F.3d 164 (5th Cir. 2019) (noting that "none of [the *Flores* Agreement] provisions suggest that minors should be released to an adult who has been charged with, and is being detained for, an immigration offense").[7]

* * *

Because Plaintiffs have failed to allege facts that take their FTCA claims outside the

---

[7] Plaintiffs also claim that the United States violated CBP's National Standards on Transport, Escort, Detention and Search (TEDS).  Doc. 1 ¶ 51. But again, they do not explain what provision of these standards was violated, or how.

discretionary function exception, the Court should dismiss the Complaint for lack of jurisdiction.

*See Warren v. United States*, 244 F. Supp. 3d 1173, 1178 (D.N.M. 2017) (granting motion to

dismiss where the complaint "fail[ed] to make the requisite allegations establishing that the

discretionary function exception does not bar the Court's jurisdiction").

**B. There Is No Private Person Analog for Plaintiffs' Claims.**

The FTCA authorizes claims against the United States only where "the United States, if a

private person, would be liable to the claimant in accordance with the law of the place where the

act or omission occurred." 28 U.S.C. § 1346(b)(1); *see also id*. § 2674 (authorizing tort recovery

against the United States only "in the same manner and to the same extent as a private individual

under like circumstances").

There is no basis for liability under the FTCA where a plaintiff alleges "a type of conduct

that private persons could not engage in, and hence could not be liable for under local law."

*United States v. Agronics Inc*., 164 F.3d 1343, 1346 (10th Cir. 1999) (internal quotation marks

omitted). In particular, the United States has not waived its sovereign immunity for decisions to

enforce federal law because there is no private person counterpart to the conduct alleged here.

*See McGowan v. United States*, 825 F.3d 118, 127 (2d Cir. 2016) (rejecting prisoner's FTCA

claim of wrongful confinement in a segregation unit because "[p]rivate persons cannot establish

facilities to detain other persons"); *accord Cortez v. E.E.O.C*., 585 F. Supp. 2d 1273, 1291

(D.N.M. 2007) ("There is no FTCA liability, because there is no private analogue to the EEOC's

work in processing and investigating discrimination charges.").

The alleged harms here stem from the federal government's decision to enforce federal

immigration laws and hold Plaintiffs' mother in secure adult detention pending her immigration

proceedings, rendering Plaintiffs "unaccompanied" and resulting in their placement in the care

and custody of ORR.  Because only the federal government has the authority to enforce federal

criminal and immigration laws and make determinations concerning detention, there is no private person analog that would support a claim under the FTCA. *See, e.g., S.E.B.M. v. United States*, --- F.Supp.3d ----, 2023 WL 2383784, at *8-*9 (D.N.M. Mar. 6, 2023) (dismissing claims for IIED and negligence based on plaintiffs' separation in immigration proceedings because "a private person in the same circumstances" would not have been liable); *Ryan v. U.S. Immigration & Customs Enf't*, 974 F.3d 9, 26 (1st Cir. 2020) ("Controlling immigration and the presence of noncitizens within the country are duties and powers vested exclusively in the sovereign."); *Elgamal v. Bernacke*, 714 F. App'x 741, 742 (9th Cir. 2018) ("[B]ecause no private person could be sued for anything sufficiently analogous to the negligent denial of an immigration status adjustment application, that claim must be dismissed as well."); *Elgamal v. United States*, No. 13-00867, 2015 WL 13648070, at *5 (D. Ariz. July 8, 2015) (recognizing that "immigration matters" are "an inherently governmental function"); *Bhuiyan v. United States*, 772 F. App'x 564, 565 (9th Cir. 2019) ("[T]here is, as a general matter, no private analogue to governmental withdrawal of immigration benefits."); *Mazur v. United States*, 957 F. Supp. 1041, 1042–43 (N.D. Ill. 1997) (in matters relating to naturalization of noncitizens, "only the United States has the power to act," and, "[a]ccordingly . . . there is no private analog under state law").

Because a private person would not be liable for IIED or negligence based on the facts alleged here, Plaintiffs cannot establish a jurisdictional element of their FTCA claims. Consequently, the Court should dismiss these claims for lack of subject matter jurisdiction.

### C. The Exception for Actions Taking While Reasonably Executing the Law Also Bars Plaintiffs' Claims.

The Court also lacks jurisdiction under the exception for actions taken while reasonably executing the law. Under that exception, the United States is not liable for "[a]ny claim based upon an act or omission of an employee of the Government, exercising due care, in the execution

of a statute or regulation, whether or not such statute or regulation be valid." 28 U.S.C.

§ 2680(a). This exception "bars tests by tort action of the legality of statutes and regulations."

*Dalehite v. United States*, 346 U.S. 15, 33 (1953), *partially overruled on other grounds as*

*recognized in Rayonier Inc. v. United States*, 352 U.S. 315, 319 (1957); *see also Ascot Dinner*

*Theatre, Ltd. v. Small Bus. Admin.*, 887 F.2d 1024, 1029 (10th Cir. 1989) (holding that this

exception barred an FTCA claim alleging that a regulation is facially discriminatory under the

First Amendment or was unconstitutional as applied by a federal agency). Hence, when a

complaint alleges "acts performed in furtherance of applicable statutes and an applicable

regulation, . . . [a] suit cannot be maintained under the Tort Claims Act," "even though the

regulation may be irregular or ineffective." *Powell v. United States*, 233 F.2d 851, 854-55 (10th

Cir. 1956).

In deciding whether this exception bars a claim, courts undertake a two-part analysis: first

"determin[ing] whether the statute or regulation in question specifically proscribes a course of

action for an officer to follow," and second, "if a specific action is mandated, . . . inquir[ing] as

to whether the officer exercised due care in following the dictates of that statute or regulation."

*Welch v. United States*, 409 F.3d 646, 652 (4th Cir. 2005). "If due care was exercised, sovereign

immunity has not been waived." *Id*.

Here, as discussed above, DHS officers were authorized by statute to prosecute Plaintiff

Gonzales de Zuniga as well as to determine whether her two sons were UACs. Once they made

that protected discretionary determination, the TVPRA required DHS to place Erick and Mino in

the custody and care of ORR. *See* 8 U.S.C. § 1232(b)(3); *see also* Doc. 1 ¶ 35 (acknowledging

that "TVPRA requires DHS to place [noncitizen unaccompanied children] into ORR custody

within 72 hours, absent exceptional circumstances"); *id*. ¶ 37 (referring to the "72-hour

requirement" and "72-hour rule"). Furthermore, once Erick Mino and were in ORR custody,

ORR was required to make certain safety and suitability assessments before placing them with

their aunt. *See* 8 U.S.C. § 1232(c)(3)(A). The enforcement of that statutory command cannot

form the basis of an FTCA claim.  *See S.E.B.M.*, 2023 WL 2383784, at *16 (plaintiff's

"placement in ORR custody was protected by the due care exception").

## II.     Plaintiffs Have Failed to State a Claim for IIED Under Rule 12(b)(6).

Even if this Court were to conclude that it had jurisdiction over Plaintiffs' claims, which

it should not, Plaintiffs' IIED claim should still be dismissed for failure to state a claim upon

which relief can be granted.  Fed. R. Civ. P. 12(b)(6).

The applicable law to a claim under the FTCA is "the whole law of the State where the

act or omission occurred," including conflict-of-laws principles. *Richards v. United States*, 369

U.S. 1, 11 (1962). "Neither the text of the FTCA nor *Richards* provides any guidance" where, as

here, "the alleged acts or omissions occur in more than one state." *Sosa v. Alvarez-Machain*, 542

U.S. 692, 758 (2004) (Ginsburg, J., concurring) (quoting *Gould Elecs. Inc. v. United States*, 220

F.3d 169, 181 (3d Cir. 2000) (alteration in original)). "Courts have adopted at least five different

approaches to determine which acts count in deciding which state's choice-of-law principles

apply under § 1346(b):

> (1) applying different rules to different theories of liability; (2) choosing the place
> of the last allegedly-wrongful act or omission; (3) determining which asserted act
> of wrongdoing had the most significant effect on the injury; (4) choosing the state
> in which the United States' physical actions could have prevented injury; and (5)
> determining where the 'relevant' act or omission occurred."

*Draughon v. United States*, 103 F. Supp. 3d 1266, 1281 (D. Kan. 2015) (citing *Gould Elecs.*, 220

F.3d at 181). Although the "Tenth Circuit has not addressed the question," at least one district

court in the circuit has adopted the "last significant act or omission" rule set forth in *Gould*

*Electronics* and endorsed by Justices Ginsburg and Breyer in their concurrence in *Sosa*. *Id*. "Given the lack of on-point controlling authority in this Circuit and the persuasive reasoning of the Third Circuit and the concurring justices in *Sosa*," *id*., this Court should also follow the "last significant act or omission" rule.

Here, Plaintiffs allege that "the forceful separation of parent and child in this case was extreme and outrageous[,]" Doc. 1 ¶ 89, and that this separation occurred in New Mexico, *see id*. ¶ 57 (noting that "the injury occurred when they were detained and separated in New Mexico"). Accordingly, New Mexico law should apply to Plaintiffs' IIED claim.

To establish the elements of a claim for IIED, New Mexico "has adopted the approach used in the *Restatement (Second) of Torts* § 46." *Baldonado v. El Paso Nat. Gas Co*., 176 P.3d 277, 283 (N.M. 2008) (internal quotation marks omitted). A plaintiff alleging IIED must show "(1) the conduct in question was extreme and outrageous; (2) the conduct of the defendant was intentional or in reckless disregard of the plaintiff; (3) the plaintiff's mental distress was extreme and severe; and (4) there is a causal connection between the defendant's conduct and the claimant's mental distress." *Id*. (internal quotation marks omitted). Moreover, New Mexico courts recognize that "'conduct, although it would otherwise be extreme and outrageous, may be privileged under the circumstances.'" *Id*. at 285 (quoting *Restatement (Second) of Torts* § 46 cmt. g) (alteration omitted)). "The actor is never liable, for example, where he has done no more than to insist upon his legal rights in a permissible way, even though he is well aware that such insistence is certain to cause emotional distress." *Restatement (Second) of Torts* § 46 (1965) (citing an example of a landlord threatening to evict "A and her children," who are "destitute, ill, and unable to pay their rent"; while the "conduct is heartless, he has done no more than the law permits him to do, and he is not liable to A for her emotional distress").

Here, once Plaintiff Gonzales de Zuniga was placed into the custody of the U.S. Marshals Service for prosecution and Plaintiffs Erick and Mino became UACs under federal law, CBP was required to "transfer the custody of such children to the Secretary of Health and Human Services not later than 72 hours" later. 8 U.S.C. § 1232(b)(3); *see also* Doc. 1 ¶ 33 (noting that TVPRA "requires DHS to place [noncitizen unaccompanied children] into ORR custody within 72 hours"). Because the separation was legally permitted, it was privileged under New Mexico law. *See, e.g.*, *Galicia v. United States*, No. CV 13-0105 MCA/LAM, 2015 WL 12696086, at *2 (D.N.M. Feb. 24, 2015) (finding that a Border Patrol agent's actions "in arresting and detaining Plaintiff" and "removing Plaintiff to Mexico" did not constitute IIED under New Mexico law because these actions "were authorized by law"). Accordingly, Plaintiffs have not plausibly alleged conduct that would constitute IIED under New Mexico law and the Court should dismiss this claim for failure to state a claim on which relief may be granted.

## **CONCLUSION**

For the foregoing reasons, the Court should dismiss the Complaint.

Respectfully Submitted,

ALEXANDER M. M. UBALLEZ
United States Attorney

*/s/ Manuel Lucero 6/22/23*
MANUEL LUCERO
Assistant United States Attorney
P.O. Box 607
Albuquerque, New Mexico 87103
(505) 224-1467; Fax: (505) 346-7205
Manny.lucero@usdoj.gov

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on June 22, 2023, I filed the foregoing pleading electronically through the CM/ECF system which caused all parties or counsel to be served by electronic means as more fully reflected on the Notice of Electronic Filing.

*/s/ Manuel Lucero 6/22/23*
MANUEL LUCERO
Assistant United States Attorney