IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

| | | |
|---|---|---|
| KELDY GONZALES DE ZUNIGA, | § | |
| ERICK ZUNIGA GONZALES, and | § | |
| MINO ZUNIGA GONZALES | § | |
| | § | |
| *Plaintiffs*, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 2:23-CV-162-MV-JHR |
| | § | |
| THE UNITED STATES OF | § | |
| AMERICA, | § | |
| | § | |
| *Defendant*, | § | |

## PLAINTIFFS' RESPONSE TO DEFENDANT'S MOTION TO DISMISS

Now comes Plaintiffs Keldy Gonzales de Zuniga, Erick Zuniga Gonzales and Mino Zuniga Gonzales, by and through their counsel of record and file their response to Defendant's Motion to Dismiss. In support of their response, Plaintiffs would show the Court as follows:

## FACTUAL BACKGROUND

In September 2017, Erick and Mino Zuniga Gonzales were 13 and 15 years of age, respectively. They were both from Juticalpa, Olancho, Honduras. They and their mother, Keldy Gonzales de Zuniga, fled to the United States because of violence and death threats in their home country. [ECF 1, ¶52]. On or around September 19, 2017, the family crossed into the United States and turned themselves into CBP officials. [*Id*. at ¶54]. As a result, they were transported by CBP officials from the border area to a Border Patrol holding facility in Deming, New Mexico and processed by CBP Agent Aaron Dozal. [*Id*]. Initially, CBP treated Ms. Gonzales and her children as a family unit and told the family that they would make sure they were kept together while they went through the asylum process. [*Id*. at ¶56].

Then, on September 21, Agent Dozal at the behest of his Acting Supervisory Border Patrol Agent did an about-face. Agent Dozal and other agents at the Deming facility were ordered to

1

separate the family. They did so.  [*Id.* at ¶57]. The agents falsely told Gonzales, Erick, and Mino that Erick and Mino would go to a shelter and be able to meet with her in around five days after she comes out of jail for serving time for crossing the border unlawfully. [*Id.* at ¶¶58, 59]. In fact, the children were sent to a juvenile facility to be treated as unaccompanied children – even though they clearly had a mother who was traveling with them. [*Id.* at ¶60]. The agents forcibly removed the boys from Gonzales. [*Id.* at ¶61].  CBP agents did not provide the children nor Gonzales any information about what was going to happen to them after they were separated other than what is described above. [*Id.* at ¶62].

After the separation, agents transferred Gonzales to the custody of the U.S. Marshals Service in a detention center in Deming. She was held in custody of the U.S. Marshals Service from September 22 until on or immediately after September 28, 2017 when she was sentenced with time served sentence for violating 8 U.S.C. § 1325. She pled guilty to this crime. [*Id.* at ¶63].

On September 28, 2017, despite the assurances that she would be reunified, Defendant officials transferred Gonzales to ICE custody to the El Paso Service Processing Center (EPSPC) without her children. She remained in the EPSPC without her children for another year and a half until she was finally deported from the U.S. in or around January 2019. [*Id.* at ¶64].

Gonzales and her children had no communication with each other for around one month. [*Id.* at ¶65].  After that, she was only able to speak with her children about once per week and was never able to see them in person. [*Id.* at ¶66].

Erick and Mino were designated as UACs and transferred to a center for single children elsewhere in Texas. They were then released in October 2017 to Gonzales's sister.  [*Id.* at ¶70]. Erick and Mino were not able to communicate with their mother while they were in detention. [*Id*

at ¶71].  Erick and Mino were finally released to their aunt around one month after being detained and after being separated from their mother. [*Id*. at ¶72].

In January 2019, a guard informed Gonzales that she would be deported because her legal case was over. The guard told her – after pulling her from her bed in the middle of the night – that she would be sent to Honduras without her children. [*Id*. at ¶74]. Gonzales started crying – begging the guards not to send her because she would lose her children. She was pulled from her cell, placed on an airplane and deported directly to San Pedro Sula which is located in Northern Honduras.  *Id*. at para. 75. She remained stuck in Honduras and Mexico until May 2021 when the new federal administration approved humanitarian parole to Gonzales to allow her to be reunited with her sons in the United States. [*Id* at ¶¶76-79].

Erick and Mino suffered severe physical and emotional trauma as a result of their separation from their mother. [*Id*. at ¶¶61, 80-87]. Both of them suffered from depression, stopped eating, suffered from breathing issues, and suffered from lack of focus. Gonzales lived in constant stress while she was detained and while she was stuck in Mexico. She also suffered physical ailments as a result of the separation. [*Id*. at ¶¶69, 80-87].

Plaintiffs' separation was one of thousands and was proximately caused by a plan created by Defendant and its agents to use criminal prosecution of minor immigration crimes (which were not previously prioritized) to separate families with "the hope that this separation will act as a deterrent to parents bringing their children." [*Id*. at ¶¶20-36]. Defendant engaged in this plan with an intent to avoid reunification of families following prosecution because reunification would, as one ICE deputy put it, "obviously undermine[] the entire effort." [*Id*. at ¶40].  Defendant also engaged in this effort without creating any method by which it could ensure that families could communicate with each other following separation. [*Id*. at ¶¶32-45].

Plaintiffs brought this claim against the United States of America under the Federal Tort Claims Act (FTCA) alleging that the federal government is responsible for the harms it caused under a claim for Intentional Infliction of Emotional Distress (IIED) and negligence. *See, generally,* [*Id*]. Defendant now seeks to dismiss Plaintiffs' claim. [ECF No. 13].  For all the reasons set forth below, Defendant's motion should be denied.

<u>**ARGUMENT AND AUTHORITIES**</u>

## I.     **Legal Standard**

Defendant makes most of its arguments under Fed. R. Civ. P. 12(b)(1). Rule 12(b)(1) attacks the subject matter jurisdiction and can be facial or factual. *Holt v. United States,* 46 F.3d 1000, 1002 (10th Cir. 1995). Defendant here brings a facial attack because it questions the "sufficiency of the complaint." *Id.* As such, the Court must accept the allegations as true and resolve all issues as a motion to dismiss in resolving this matter. Plaintiff does bear the burden of establishing subject matter jurisdiction (unless case law states otherwise). *Montoya v. Chao,* 296 F.3d 952, 955 (10th Cir. 2002).

Defendant makes one argument that dismissal is warranted against Plaintiffs' IIED claim under Fed. R. Civ. P. 12(b)(6). *See, infra,* Sec. V. Rule 12(b)(6) allows for dismissal if a party establishes that allegations are not "plausible on their face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007). In assessing a Rule 12(b)(6) motion, the Court must accept all "well pleaded facts as true, view them in the light most favorable to the non-moving party, and draw all reasonable inferences in their favor." *Smith v. McDonough,* No. 22-6131, 2023 WL 2765898, at *3 (10th Cir. Apr. 4, 2023) (citing *Brooks v. Mentor Worldwide LLC,* 985 F.3d 1272, 1281 (10th Cir. 2021)).

**II.     The discretionary function exception does not bar Plaintiffs' claim.**

Defendant first argues that Plaintiffs' Complaint should be dismissed for lack of jurisdiction because the discretionary function exception (DFE) bars Plaintiffs' claims. [ECF 13, p. 9-19]. Defendant's argument is without merit. The governmental decisions forming the basis of Plaintiffs' claims fall outside the DFE and immunity has not been preserved for these claims.

The FTCA bars claims against the United States "based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of the federal agency or an employee of the Government, whether or not the discretion involved be abused." *Ball v. United States*, 967 F.3d 1072, 1075-76 (10th Cir. 2020) (quoting 28 U.S.C. § 2680(a)). "The exception 'marks the boundary between Congress' willingness to impose tort liability upon the United States and its desire to protect certain governmental activities from exposure to suit by private individuals.'" *Id.* (quoting *United States v. Varig Airlines*, 467 U.S. 797, 808 (1984)).

To determine whether the DFE applies, courts use a two-part test set forth in *Berkowitz v. United States*, 486 U.S. 531, 536-37 (1988). First, the Court must analyze whether the challenged conduct involves an element of: (1) judgment or choice; or (2) a federal statute, regulation or policy that specifically prescribes a course of action for an employee to follow. If the latter, the exception does not apply. *Id.*

If the answer to this first step is the former – that the conduct involves an element of judgment or choice – then the conduct is discretionary. In that case, the Court must move to the second step – decide whether that judgment is the kind that the discretionary function exception was designed to shield. *Id.* Specifically, discretionary decisions based on social, economic, or political goals of the governing statute or regulations are protected.  *Id.* As to this second prong, the Complaint must allege facts that establish that challenged actions are not the kind of conduct

considered grounded in the policy of the regulatory scheme. *Id*. In other words, Plaintiffs have the burden of showing the government's conduct was not grounded in policy. *Ball,* 967 F.3d at 1079.

The DFE does not shield Defendant from liability where guidelines and standards "leave[] no room for choice" with mandatory language that "specifically prescribes a course of action." *Gallegos v. United States*, No. CV 08-0014 RB/LFG, 2009 WL 10664932, at *4-5 (D.N.M. Feb. 26, 2009) (holding that Forest Service manual directives were "undeniably mandatory").

Plaintiffs have alleged the following conduct forming the basis of their claim: (1) agents separated Mino and Erick from their mother, Ms. Gonzales.  [ECF No., ¶61]; (2) agents failed to reunify Mino and Erick after Ms. Gonzales was sentenced to time served and released from U.S. Marshal's Service custody on September 28, 2017, [*Id*. at ¶¶63-64]; and (3) agents deprived any contact between Ms. Gonzales and her children for approximately one month and under extremely limited basis thereafter. [*Id*. at ¶65].

A.    <u>The DFE does not apply to Defendant's separation of Erick and Mino from Gonzales and Defendant's failure to reunify them after separation.</u>

First, Plaintiffs alleged sufficient facts to show that Defendant's decision to separate and keep separate Mino and Erick from their mother falls outside the DFE.

i.    *Various federal directives and the Flores settlement agreement deprived Defendant's agents of the discretion to separate Plaintiffs and to decline to reunify them.*

The separation of Mino and Erick from their mother, as alleged, violated federal directives set forth in 8 C.F.R § 1236.3, the National Standards on Transport, Escort, Detention and Search (TEDS), U.S. Customs & Border Protection, and the Stipulated Settlement Agreement from *Flores v. Reno*, No. 85-cv-4544 (C.D. Cal. Jan. 17, 1997).  [ECF 1, ¶¶50, 51].

TEDS Standards §§1.9 and 5.6 and 8 C.F.R. §1236.3 provide that "family units with juveniles should not be separated." TEDS §5.6. Moreover, "Officers/Agents will place each

6

[juvenile] in the least restrictive setting… provided that such setting is consistent with the need to ensure the safety and security of the detainee and that of others." *Id.* "CBP will maintain family unity to the greatest extent operationally feasible, absent a legal requirement or an articulable safety or security concern that requires separation."  TEDS §1.9.

Similarly, the *Flores* settlement decree did not give Defendant's agents the discretion to separate children from their mother and transfer them to ORR custody. As the judge overseeing that consent decree explained, the *Flores* agreement gave detained parents the right to have children placed into ORR custody, sent out of family detention, or to waive their right to those actions. *Flores v. Sessions,* 2018 WL 4945000, at *4 (C.D. Cal. July 9, 2018). The *Flores* Agreement also expresses an explicit policy favoring the release of minors to their parents or legal guardians. *See*, *Ruiz v. United States*, No. 13-CV-1241, 2014 WL 4662241, at *7 (E.D.N.Y. September 18, 2014). It did not permit them to separate the children from their mother and to decline to reunify them. *Id.* at *8. That Gonzales was charged with a criminal misdemeanor does not change the analysis. *Jacinto-Castanon de Nolasco v. U.S. Immig. & Customs Enf't,* 319 F. Supp. 3d 491, 495 n2 (D.D.C. 2018) (even if plaintiff mother was prosecuted, her children were "not true unaccompanied minors.").

More importantly, even if these directives do not satisfy the first prong of the *Berkowitz* analysis, the decision to separate Mino and Erick from their mother and decline to reunify them clearly fails the second prong of the *Berkowitz* analysis which looks to whether the conduct is "susceptible to policy analysis."  *K.O. by & through E.O. v. United States*, No. CV 4:20-12015-TSH, 2023 WL 131411, at *8 (D. Mass. Jan. 9, 2023) (citing *Hajdusek v. United States*, 895 F.3d 146, 150 (1st Cir. 2018)). *See also A.E.S.E. v. United States*, No. 21-CV-0569 RB-GBW, 2022 WL 4289930, at *11 (D.N.M. Sept. 16, 2022).

The second prong asks whether family (initial and on-going) separation was susceptible to a weighing of competing policy priorities. *K.O.,* 2023 WL 131411, at *8. The CBP manual and the *Flores* agreement "establish settled legitimate priorities."  *Id.* The standards make clear that only "an articulable safety or security concern" can justify separation. *Id.*

The decision to separate Mino and Erick and decline to reunify them with their mother is not susceptible to policy analysis. Plaintiffs have alleged that the only articulated reason for separating families was the *in terrorem* effect it may have on parents and families. [ECF 1, ¶¶22-25, 29, 40, 47-48]. The El Paso Initiative commenced in April 2017 with a decision to prosecute parents in family units under 8 U.S.C. §§ 1324 *and* 1325 to facilitate the separation of families to "'create a more effective deterrent.'" [*Id.* at ¶¶25, 28, 47]. Defendant acted with negligence or, worse, malice. It ignored warnings that its actions would severely impact the safety of children and cause trauma. [*Id.* at ¶¶22-24, 32-36, 38, 40, 49]. Since this stated purpose is not consistent with the directives' policy considerations of separating families only on the basis of legitimate priorities of safety or security concerns, Plaintiffs have met their burden to show that the conduct was not susceptible to policy analysis and the DFE does not apply. *K.O.*, 2023 WL 131411 at *8; *F.R. v. United States*, No. CV-21-00339-PHX-DLR, 2022 WL 2905040 (D. Arizona July 22, 2022); *C.M. v. United States*, No. 19-cv-05217-PHX-SRB, 2020 WL 1698191, at *4 (D. Ariz. March 30, 2020); *A.P.F. V. United States*, 492 F. Supp. 3d 989, 996-97 (D. Ariz. 2020); *A.I.I.L. v. Sessions*, No. CV-19-00481-TUC-JCH, 2022 WL 992543, at *3-4 (D. Ariz. Mar. 31, 2022); *Ruiz,* 2014 WL 4662241, at *8 (finding that where IIED and negligence claims arise from CBP's decision to detain a four year old U.S. citizen for fourteen hours without contacting his parents, the DFE did not bar suit because such a decision could not be grounded in the appropriate policy considerations). Defendant's failures therefore did not reflect a "weighing of practical and policy

considerations [that] represents the kind of policy judgment that Congress intended to protect through the [DFE]." *Marlys Bear Med. v. U.S. ex rel. Sec'y of Dep't of Interior*, 241 F.3d 1208, 1214 (9th Cir. 2001).

Defendant ignores the totality of Plaintiff's complaint and reframes the issue of family separation as a narrow question of whether Defendant had discretion to prosecute Gonzales. [E.C.F. No. 13, p. 13] Defendant relies on a recent decision to argue that the government's discretion to detain Gonzales and separate her from her children is indivisible from the decision to prosecute her and, for this reason, the prosecutorial decision is protected by the DFE. [*Id*]. (citing *S.E.B.M. v. United States*, -- F. Supp. 3d --, No. 1:21-cv-00095-JHR-LF, 2023 WL 2383784, at *14-15 (D.N.M. March 6, 2023)).

Defendant's reliance on *S.E.B.M.* is misplaced. First, *S.E.B.M.* cites no authority for its novel "indivisible" argument. 2023 WL 2383784, at *14. Defendant also ignores the allegations made here that the disruption of a protected parent-child relationship was in fact the intended outcome of the prosecution of the parent. [ECF No. 1, ¶¶29, 48].

Moreover, Defendant and the court in *S.E.B.M.* rely heavily on the decision in *Delgado v. INS*, 637 F.2d 762 (10th Cir. 1980). That case, however, is inapposite to the case at hand. In *Delgado*, the children's separation from their father was an "incidental" consequence of their father's deportation. *Id.* at 764. By contrast, here, Plaintiffs allege that their separation was the purpose of Gonzales's prosecution. [ECF No. 1, ¶¶29, 48]. Other courts considering family separations initiated by similar prosecutions have found the intent of these separations rendered them unconstitutional and falling outside of the DFE. *D.A. v. United States,* -- F.Supp. 3d --, No. EP-22-CV-00295-FM, 2023 WL 2619167, at *9 (W.D. Tex. Mar. 23, 2023); *Fuentes-Ortega*, No. CV-22-00449-PHX-DGC, 2022 WL 169244223, at *3 (D. Arizona November 14, 2022); *C.M.,*

2020 WL 1698191, at *4; *A.I.I.L.,* 2022 WL 992543, at *3-4; *B.A.D.J. v. United States*, No. CV-21-00215-PHX-SMB, 2022 WL 11631016, at *3 (D. Ariz. Sept. 30, 2022); *F.R. v. United States*, No. CV-21-00339-PHX-DLR, 2022 WL 2905040, at *5 (D. Ariz. July 22, 2022).

Finally, as stated above, Defendant's decision to prosecute Gonzales is separate and apart from its continual separation and failure to reunify Plaintiffs after Gonzales was placed back in civil immigration custody.

Therefore, the Court should deny Defendant's motion under the DFE because the directives listed above deprived Defendant's agencies of discretion to engage in the alleged conduct and the decision to separate and fail to reunify Plaintiffs is not susceptible to policy analysis.

ii.     *The Constitution deprived Defendant's agents of the discretion to separate Plaintiffs.*

In addition, Plaintiffs' claims based on Defendant's separation are not protected by DFE because Plaintiffs allege that Defendant's conduct violated their constitutional rights. [ECF 1, ¶50]. Unconstitutional actions are not protected by DFE under the first prong of the analysis. *See*, *D.A.,* 2023 WL 2619167, at *9 ("The issue of constitutional rights is relevant only with respect to whether Defendant had discretion to act as it did and, therefore, whether it retains immunity from suit regarding Plaintiffs' state law causes of action.").

Defendant's forced separation of Plaintiffs violates the constitutional rights to equal protection, procedural due process, and substantive due process. *See*, *Id.* at *9-10; *C.M.,* 2020 WL 1698191, at *4; *A.P.F.,* 492 F. Supp. 3d at 996-97.

With respect to equal protection, Plaintiffs have alleged that Defendant engaged in selective prosecution pursuant to the "El Paso Initiative." [ECF 1, ¶24].  This program was limited to the U.S. Border Patrol's El Paso Sector which covers part of West Texas and New Mexico on the U.S/Mexico border. [*Id*]. The goal of the initiative was to refer family unit adults for criminal

prosecution leading to the separation of children from their parents as a method to scare other families from seeking asylum. [*Id*. at ¶¶20-31]. This initiative was the precursor for the Zero Tolerance Policy adopted in May 2018 which directed U.S. Attorneys to adopt a zero-tolerance policy for all offenses referred for prosecution under 8 U.S.C. §1325 <u>only</u> along the Southwestern Border. [*Id*. at ¶43]. Both the El Paso Initiative and the Zero Tolerance Policy targeted Latino Spanish-speaking migrants while leaving others similarly situated on the Northern border unaffected. This amounted to selective prosecution motivated by discriminatory animus towards Latino immigrants. *See*, *D.A*., 2023 WL 2619167 at *7-8.  As a plausible violation of equal protection rights, the criminal prosecution of Gonzales and separation from her children is not protected by DFE.  *Id*.

In addition, Defendant's forced separation of Plaintiffs violated Plaintiffs' constitutional right to family integrity which is secured by procedural and substantive due process.  [ECF No. 1, ¶50]. In the context of the right to family integrity, due process requires that a child cannot be removed from a parent without a court order or exigent circumstances. *D.A*., 2023 WL 2619167, at *8. The right to family integrity recognizes a fundamental liberty interest in a parent's custody and control of her children. *See*, *K.O.,* 2023 WL 131411, at *9; *C.M.*, 2020 WL 1698191, at *4; and *A.P.F.* 492 F. Supp. 3d at 996-97. With respect to the substantive due process rights, the right to family integrity is violated when government action can be characterized as "arbitrary or conscience shocking." *County of Sacramento v. Lewis*, 523 U.S. 833, 847 (1998).

Plaintiffs acknowledge that generally parents and children may lawfully be separated when the parent is placed lawfully in criminal custody. *See K.O*., 2023 WL 131411, at *9.  However, here, Plaintiffs were initially detained together in civil immigration detention before they were separated and Gonzales was transferred to U.S. Marshals custody and selectively charged under 8

U.S.C. § 1325. [ECF 1, ¶¶54-63]. In addition, Gonzales was placed back in civil immigration detention seven days later. [*Id.* at ¶¶63-65]. The separation of Plaintiffs prior to Gonzales' criminal prosecution and the continued separation of Plaintiffs after Gonzales' short sentence violated their rights to family integrity because Gonzales was not given a meaningful opportunity to be heard, there were no exigent circumstances justifying the separation, and their long-term separation was arbitrary since they could have been reunited after Gonzales's incarceration. *See D.A.*, 2023 WL 2619167, at *9 (citing *Ms. L. v. United States Immigr. and Customs Enforcement*, 310 F.Supp.3d 1133, 1143 (S.D. Cal. 2018)).[1] Such conduct is "brutal, offensive … and shocks the conscience and violates Plaintiffs' constitutional right to family integrity." *Ms. L.,* 302 F. Supp. 3d at 1167.

Many other courts looking at this issue have found forced family separation in comparable circumstances is unconstitutional and outside the scope of the DFE. *See*, e.g., *K.O.,* 2023 WL 131411, at *9; *Fuentes-Ortega*, 2022 WL 169244223, at *3; *A.F.P*, 2022 WL 2704570, at *1; *A.I.I.L.* 2022 WL 992543, at *3-4 (the DFE does not apply in a family separation FTCA case because the conduct was unconstitutional); *C.M.,* 2020 WL 1698191, at *4; *A.P.F.,* 492 F. Supp. 3d at 996-97; *D.J.C.V. v. United States*, 605 F. Supp. 3d 571, 591 (S.D.N.Y. 2022); *M.G.U. v. Nielsen*, 325 F. Supp. 3d 111, 121 (D.D.C. 2018); *Ms. L. v. United States Immigr. and Customs Enforcement*, 302 F. Supp. 3d 1149, 1161-67 (S.D. Cal. 2018); *W.S.R. v. Sessions*, 318 F. Supp. 3d 1116, 1124-26 (N.D. Ill. 2018); *Nunez Euceda v. United States*, No. 220CV10793VAPGJSX, 2021 4895748, at *3 (C.D. Cal. Apr. 27, 2021). *See also United States v. Dominguez-Portillo*, No. EP-17-MJ-4409-MAT, 2018 WL 315759, at * 6 (W.D. Tex. Jan. 5, 2018) ("If Defendants are in fact separated from their children at the time of their arrest, prohibited from communicating with their children, not given any substantive information about the location and well-being of their

---

[1] The time Gonzales spent in U.S. Marshals custody also was unconstitutional since it was the product of a selective prosecution in violation of her equal protection rights, as argued above.

children, and effectively barred from participating in their children's immigration proceedings up until the time of their (or their children's) deportation, then Defendants' constitutional rights to familial association may be implicated.").[2]

Defendant argues that the "Tenth Circuit has never held that the discretionary function exception applies only when the underlying conduct was constitutional."  [ECF No. 13, p. 15] (citing *Ramirez v. Reddish*, No. 2:18-CV-00176-DME-MEH, 2020 WL 1955366, at *28 (D. Utah Apr. 23, 2020)).  Defendant fails to note the corollary – the Tenth Circuit has never held that the Constitution *may not* be a source of law to determine whether the first prong of the *Berkowitz* analysis has been met.  *See*, *Ramirez*, 2020 WL 1955366, at *29 ("This Court declines, without explicit congressional, Supreme Court, or Tenth Circuit direction to superimpose such an involved detailed analysis of the constitutionality of the federal employee's conduct challenged under the FTCA...").

In fact, the Tenth Circuit in an unpublished decision has observed that "[m]ost circuits have held conduct is not discretionary when it 'exceeds constitutional bounds.'" *Martinez v. United States*, 822 F. App'x 671, 676 (10th Cir. 2020) (citing *Loumiet v. United States*, 828 F.3d 935, 944 (D.C. Cir. 2016)).  Other circuits have, indeed, regularly come to this conclusion. *See, e.g., Fazaga v. Fed. Bureau of Investigation*, 965 F.3d 1015, 1065 (9th Cir. 2020) ("[T]he Constitution can limit the discretion of federal officials such that the FTCA's [DFE] wil not apply."); *Limone v. United States*, 579 F.3d 79, 102 (1st Cir. 2009); *Raz v. United States*, 343 F.3d 945, 948 (8th Cir. 2003); *Medina v. United States*, 259 f.3d 220, 225 (4th Cir. 2001); *U.S. Fid. & Guar. Co. v. United States*,

---

[2] Several of these cases involve the Zero Tolerance policy that came into effect in 2018.  Plaintiffs were separated under the El Paso pilot program that was a precursor to the Zero Tolerance Policy.  However, courts have found no distinction between the two for purposes of the DFE analysis.  *See Fuentes-Ortega*, 2022 WL 16924223, at *3 *and A.P.F.*, 492 F.Supp.3d at 992-993.

837 F.2d 116, 120 (3d Cir. 1988); *Sutton v. United States*, 819 F.2d 1289, 1293 (5th Cir. 1987); *and Myers & Myers Inc. v. USPS*, 527 F.2d 1252, 1261 (2d 1975).

Defendant also argues that the unpublished decision in *Awad v. United States*, 807 F. App'x 876 (10th Cir. 2020) precludes Plaintiffs from establishing that Defendant's conduct fell outside the DFE on the basis of its unconstitutionality. [ECF No. 13, ¶17]. Of course, *Awad* is not binding. Moreover, *Awad* does not stand for such a sweeping prohibition and is distinguishable from the case at hand. In *Awad*, the court considered whether an arrest that may have later been found to be without probable cause would fall outside the DFE. 807 F. App'x at 880-881. In considering the broad probable cause requirement to effectuate an arrest, the court observed that "deciding whether probable cause has been established involves discretion and judgment." *Id*. In contrast, the equal protection clause takes away discretion to selectively prosecute someone based on their race or national origin. *See*, *D.A.*, 2023 WL 2619167, at *7-8. In addition, the right to family integrity precludes the separation of families in civil detention and does not allow for <u>any</u> discretion to be exercised in separating families unless there is a specific safety concern. *Ms. L.,* 302 F. Supp. 3d at 1167. In other words, here, the conduct at issue does not implicate *how* the agents went about their decisions but rather whether the constitution specifically limited the exercise of discretion to act *at all*. In the instant case, the Constitution prohibited Defendant's prosecution, separation, and failure to reunify. Equal protection and the right to family integrity impose a specific prohibition on Defendant's conduct. The constitutional prohibitions alleged here are sufficiently specific as courts have repeatedly found under nearly identical circumstances. *See*, *e.g. Fuentes-Orteg*a, 2022 WL 16924223, at * 3; *A.P.F*., 492 F. Supp. 3d at 996; *Nunez Euceda*, 2021 WL 4895748, at *3; C.M., 2020 WL 1698191, at *4.

Finally, Defendant's argument that the doctrine of qualified immunity applies to the exercise of discretionary functions is a red herring. [ECF No. 13, p. 15]. Plaintiffs are not seeking to hold individual officers liable. Therefore, the doctrine of qualified immunity is not relevant to the analysis of whether the DFE applies to the conduct at issue in a federal tort claim.  Defendant incorrectly claims that the *Berkowitz* decision requires that qualified immunity and the DFE "operate in tandem."  [*Id.*] (citing *Berkowitz,* 486 U.S. at 536). *Berkowitz* does no such thing. *Berkowitz* sets forth a two-prong test that asks whether the conduct at issue was directed by a statute, regulation or policy, and, if so, whether the decision was susceptible to an analysis of economic, political or social policy. 486 U.S. at 536. Qualified immunity is a different two-prong test that asks whether the conduct was constitutional and whether the right violated was clearly established. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). While both analyses may involve consideration of discretionary decisions, they do not operate "in tandem." To rely on qualified-immunity-like principles would be to "miscast the relationship between FTCA state-law torts and *Bivens* constitutional claims." *Loumiet v. United States*, 828 F.3d 936, 945 (D.C. Cir. 2016).

Therefore, because the forced family separation in question was unconstitutional, the DFE does not apply to Plaintiffs' separation and failure to reunify claims.

B.     The DFE does not apply to Defendant's decision to deprive Plaintiffs of the ability to communicate with each other.

Plaintiffs' claims are also based on Defendant's actions when its officers deprived Plaintiffs of the ability to communicate with each other. [ECF No. 1, ¶¶65, 71-72].  This action also falls outside the DFE because while it may be discretionary, the decision is not grounded in any discernible social, economic or political policy. *See A.E.S.E.,* 2022 WL 4289930, at *12. Defendant fails entirely to address this aspect of Plaintiffs' claim in its Motion. *See, generally,* [ECF No. 13].

Plaintiffs alleged that despite assurances that Gonzales would be reunified with her children, Defendant officials transferred Gonzales to ICE custody in the EPSPC without her children. [ECF No. 1, ¶64]. Her children were designated as UACs and sent to a juvenile facility until they were released to their aunt after being detained for approximately one month. [*Id.* at ¶72]. For that month, the three of them were not able to communicate. [*Id.* at ¶71].

The *Flores* agreement "mandates that minors are to have 'contact with family members who are arrested with the minor.'" *A.E.S.E.* 2022 WL 4289930, at *12 (quoting *Flores v. Reno*, Stipulated Settlement Agreement, No. 85-CV-4544 (C.D. Cal. Jan. 17, 1997)). *See also*, *D.A.*, 2023 WL 2619167, at *7. Failure to provide minors with this contact is not grounded in any social, political or economic policy considerations. *AESE*, 2022 WL 4289930,  at *13 ("…the Court is hard-pressed to find how a policy grounded in the management of facilities justifies the refusal to allow Plaintiffs to communicate for a month.").  For this reason, the decision to deprive Plaintiffs of any communication with each other also falls outside the DFE and the Motion should be denied.

**III.**    **The due care exception does not bar Plaintiffs' claims.**

Defendant further argues that the due care exception (DCE) bars Plaintiffs' claims because Defendant's employees' actions or omissions took place while they exercised due care in the execution of a statute or regulation. [ECF No. 13, p. 20-21] (citing 28 U.S.C. § 2680(a)). This exception applies only where the Government can establish that its agents' actions took place in the (1) execution of a "statute or regulation"; and (2) the officers exercised due care in executing that statute or regulation. *Welch v. United States,* 409 F.3d 646, 652 (4th Cir. 2005).[3] The government bears the burden of proving this exception applies. *Prescott v. United States,* 973 F.2d

---

[3] Though the Tenth Circuit has not addressed the due care exception, district courts in New Mexico regularly refer to the analysis set forth in *Welch* to analyze this provision. *See, e.g., A.E.S.E.,* 2022 WL 4289930, at *13 fn8.

696, 702 (9th Cir. 1992). Here, Defendant cannot point to any statute or regulation that required the forcible separation and detention of Plaintiffs. Moreover, officials failed to exercise due care when they misled Plaintiffs in order to separate them, separated them using a pretext, failed to reunify Plaintiffs after Gonzales' criminal process had finished, and failed to allow Plaintiffs to communicate with each other. Therefore, the DCE does not apply.

A.      No statute or regulation mandated Defendant's conduct.

As to the first prong, Defendant must point to "a statute or regulation" that its agents were following. Defendant separated Plaintiffs pursuant to executive orders and internal policies. [ECF No. 1, ¶¶18-43]. *See also A.F.P.,* 2022 WL 2704570, at *15. These do not carry statutory or regulatory mandates. *See Garcia-Feliciano v. United States*, No. CIV. 12-1959 (SCC), 2014 WL 1653143, at *4 n.8 (D.P.R. Apr. 23, 2014) (DCE "would not apply here . . . because a policy—not a statute or regulation—pr[e]scribed the deputy's conduct" (citing *Welch*, 409 F.3d at 652)); *Gonzalez v. United States*, No. CV-12-01912 DMG (DTBx), 2013 WL 942363, at *3-4 (C.D. Cal. Mar. 11, 2013) ("Because Plaintiff's detention was not the result of a statutorily prescribed course of action," his claims were not barred by the DCE.). Indeed, no law or regulation required the practice of family separation. *Nunez Euceda,* 2021 WL 4895748, at *3-4; *A.P.F.*, 492 F. Supp. 3d at 995-96; *C.M.*, 2020 WL 1698191, at *3.

Defendant must also show that the separation was "required, not merely authorized, by a statute or regulation." *A.E.S.E.,* 2022 WL 4289930, at *14 (citing *A.F.P., 2022 WL 2704570, at *15) (internal citations omitted). Defendant cites only to one law to support its argument that federal law required separation – claiming that 8 U.S.C. §§ 1232(b)(3) and (c)(3)(A) required its

officers to place Erick and Mino into the custody and care of ORR. [ECF No. 13, p. 21].[4]  Both of these provisions are found in the Trafficking Victims Protection Reauthorization Act (TVPRA), Pub. L. No. 110-457, 122 Stat. 5044 (2008).

In fact, these two provisions of the TVPRA only establish a deadline and terms for transfer of unaccompanied minors – they do not mandate family separation. *Id.* Defendant appears to concede as such when it narrows the application of the DCE only to Defendant's decision to place Erick and Mino in O.R.R. custody – ignoring Plaintiffs' actual claim based on Defendant's separation of Erick and Mino from their mother (which happened before the TVPRA deadlines) or its failure to reunify them after Gonzales was put back into civil immigration detention. *See, e.g., K.O.,* 2023 WL 131411, at *6 ("The problem with defendant's syllogism is (2): the children were *already separated* before the TVPRA became relevant"). Nor does it explain how the TVPRA mandated Defendant's decision to keep Plaintiffs from communicating with each other for extensive periods of time.

More importantly, Defendant's actions may contravene the TVPRA. The TVPRA mandates transfer of children who are "unaccompanied." 8 U.S.C. § 1232(b)(3). They require O.R.R. to take custody of UACs – they make no reference to separating *accompanied* children who arrived with their parents, cruelly separating them from their parents, and then sending them to O.R.R. custody. *Id. See also, A.F.P.* 2022 WL 2704570, at *15 (finding that the TVPRA does not mandate separation or detention of a father away from his child); *A.I.I.L.,* 2022 WL 992543, at *5 (finding that the same TVPRA provisions do mandate use of prosecution of immigration law violations to separate families). Indeed, courts have noted that minor children who are "detained

---

[4] Defendant refers obliquely to its authorization "to prosecute" Ms. Gonzales. [*Id.* at 21]. However, any authority to prosecute does not mandate prosecution as the Government has discretion whether to prosecute or not prosecute for any crime. The DCE requires the existence of a statute that mandates (not just authorizes) certain actions. *Welch,* 409 F.3d at 652.

with their parents at the border and who were thereafter separated from their parents" are distinguishable from "true 'unaccompanied alien children.'" *Ms. L.,* 310 F. Supp. 3d at 1139.

Furthermore, 8 U.S.C. § 1232(c)(2)(A) may actually require reunification of Erick and Mino with their mother after she was placed in civil immigration detention because that would have been the "least restrictive setting that is in the best interest of the child." *Jacinto-Castanon de Nolasco v. U.S. Imm. & Customs Enf't,* 319 F.Supp. 3d 491, 500 (D.D.C. 2018) (noting that defendants "continued to separate [mother] and her sons in a manner that absolutely prevents her from providing care to … her sons").

It is worth noting that Defendant's position uses the TVPRA – a statute designed to protect immigrant children – into a weapon against immigrant children. Defendant claims that federal officers were required to prosecute parents – something they did little of in this District prior to implementation of the El Paso Initiative, [ECF No. 1, ¶31] – to manufacture a reason to label their children as "unaccompanied" so as to justify the separation.

Defendant's conduct was not mandated by any statute or regulation and, therefore, the DCE does not apply.

B.    <u>Defendant does not establish that its agents acted with due care.</u>

Next, even if a statute or regulation mandated the separations, Defendant has failed to establish that its agents acted with due care, "[t]he relevant question is one of reasonableness." *Hydrogen Tech. Corp. v. United States,* 831 F.2d 1155, 1161 (1st Cir. 1987). In fact, Defendant does not even make this argument. [ECF No. 13, p. 21-22]. Therefore, Defendant has failed to provide any support that it has satisfied the second prong of the DCE.

Indeed, it is hard to see how it could. Plaintiffs have alleged that Defendant's agents misled Plaintiffs as to the nature of their separation [ECF No. 1, ¶¶55-59], forcibly separated Plaintiffs

[*Id.* at ¶61], failed to give Plaintiffs facts about each other [*Id.* at ¶¶62, 64], was aware and intended for its policy to result in painful separations of thousands of families, [*Id.* at ¶¶22-36], took no care to ensure communication between Plaintiffs for an extensive period of time [*Id.* at ¶¶65-66, 71], and forced Plaintiffs into a years-long separation, [*Id.* at ¶¶65-79]. There is also no reasonable explanation why Defendant did nothing to reunite Plaintiffs after Gonzales was released from criminal custody and before Mino and Erick were released from custody. In fact, it appears they created a structure that made such reunification "a practical impossibility." [*Id.* at ¶35] (citing Office of the Inspector General, U.S. Dep't of Justice, 21-028, Review of the Department of Justice's Planning and Implementation of Its Zero Tolerance Policy and Its Coordination with the Department of Homeland Security and Health and Human Services, p. 50 (Jan. 2021).

Defendant's motion should be denied because it has failed to meet its burden that the DCE bars Plaintiffs' claims.

### IV.    The private person analog provision does not bar Plaintiffs' claims.

Defendant next argues that there is no waiver of sovereign immunity for Plaintiffs' claims because the conduct alleged constitutes conduct "that private persons could not engage in, and hence could not be liable for under local law." [ECF No. 13, p. 12] (citing *United States v. Agronics Inc.,* 164 F.3d 1343, 1346 (10th Cir. 1999) (internal quotation marks omitted). Defendant argues that the conduct underlying Plaintiffs' claims for IIED and negligence are the government's decision to enforce federal immigration laws, hold Gonzales in adult detention, and send her children to ORR custody. [ECF No. 13, p. 19]. Defendant claims that under New Mexico law, a private party would not be subject to liability for these acts because a private party cannot "enforce federal criminal and immigration laws…" [*Id.* at p. 19-20]. The Court should reject this argument because it has been rejected by the Supreme Court and misconstrues the facts alleged.

It is true that the FTCA waives United States sovereign immunity to claims that a private person (or entity) would be subject to liability for similiar claims. 28 U.S.C. § 1346(b)(1). To determine whether conduct underlying a claim has a private person analog, the comparison need not be identical – only reasonably similar. *D.A.,* 2023 WL 2619167, at *10-11. "Inherent differences between the government and a private person cannot be allowed to disrupt this analysis." *In re FEMA Trailer Formeldahyde Prods. Liab. Litig.,* 668 F.3d 281, 287 (5th Cir. 2012). The requirement that a claim address "like circumstances" does not mean "under the same circumstances." *Indian Towing Co. v. United States,* 350 U.S. 61, 64 (1955).

Here, as stated above, the conduct underlying Plaintiffs' IIED or negligence claims is the ongoing separation of Plaintiffs as a family unit. Defendant's argument, therefore, "misses the point" because "Plaintiffs are not challenging Defendant's authority to enforce federal law but rather the forced separation of their family." *D.A.,* 2023 WL 2619167, at *10.

A. The private analog requirement does not categorically bar claims which touch on the government's enforcement of criminal and immigration laws.

The Supreme Court has repeatedly held that the United States can be liable for activities over which the federal government has exclusive authority. *United States v. Olson*, 546 U.S. 43, 47 (2005) (claims against federal mine inspectors likely have private analog despite fact that United States exclusively performs inspections of state mining sites); *United States v. Muniz*, 374 U.S. 150, 159-62, 165-66 (1963) (FTCA claim available for negligence by prison officials despite fact that imprisonment is an exclusive government function). In *Indian Towing*, for example, the Supreme Court found a private analog in a claim against the U.S. Coast Guard, which was responsible for the operation of lighthouses on the coast, for negligently checking the operations of various parts of a lighthouse and for failing to give warning that the light was inoperable. 350 U.S. at 62. The Supreme Court held that this claim was "analogous to allegations of negligence by

a private person 'who undertakes to warn the public of danger and thereby induces reliance.'"
*Olson*, 546 U.S. at 47 (quoting *Indian Towing*, 350 U.S. at 64-65).

More specifically, courts have found that FTCA claims can proceed in the context of immigration enforcement. In *Mayorov v. United States,* 84 F.Supp. 3d 678 (N.D. Ill. 2015), the court permitted FTCA claims based on negligence (also alleged here), to go forward against federal immigration agents for their improper issuance of an immigration detainer. *See also Xue Lu v. Powell*, 621 F.3d 944, 947-50 (9th Cir. 2010) (rejecting the private analog defense and allowing the plaintiffs' IIED claim where an asylum officer conditioned outcomes in the plaintiffs' immigration proceedings on satisfaction of demands for money and sexual favors); *Liranzo v. United States*, 690 F.3d 78, 80-81, 94-95 (2d Cir. 2012) (finding private analog in state tort law allowing claims against private individuals for detention without "legal privilege to do so" in immigration detention context); *C.M.*, 2020 WL 1698191, at *4 (permitting FTCA claims to go forward on nearly identical facts about DHS agents' actions in separating immigrant parents and children); *Avalos-Palma v. United States*, 2014 WL 3524758, at *12 (D.N.J. July 16, 2014) (private analog doctrine did not bar claims arising from wrongful deportation). The government cites no case law that reaches the holding it necessarily seeks – that immigration officers are inherently immune from suit under the FTCA because there is no private analog in the immigration enforcement context. Taken to its logical conclusion, the government's reasoning would bar FTCA claims in nearly every aspect of law enforcement, from prison officers to FBI agents, because of the uniquely governmental nature of their work. This is contrary to the bulk of FTCA case law.

Not surprisingly, then, almost every court to consider the Government's private analog argument in the family separation context has rejected it. *See, e.g., D.A.,* 2023 WL 2619167, at *10; *B.A.D.J.* v. *United States*, No. CV-21-00215-PHX-SMB, 2022 WL 11631016, at *5 (D. Ariz.

Sept. 30, 2022); *A.E.S.E.*, 2022 WL 4289930, at *14-15; *A.F.P.*, 2022 WL 2704570, at *9-10; *D.J.C.V.,* 605 F.Supp. 3d at 600; *K.O.,* 2023 WL 131411, at *11-12.

Defendant ignores this case law and, instead, relies solely on *S.E.B.M.* and four decisions which found that "controlling immigration" or "withdrawal of immigration benefits" have no private analog. [ECF No. 13, p. 20] (citing *Ryan v. U.S. Imm. & Customs Enf't,* 974 F.3d 9, 26 (1st Cir. 2020) *and Bhuiyan v. United States,* 772 F.App'x 564, 565 (9th Cir. 2019)).[5]

With regards to the out-of-circuit decisions, Defendant's argument misses the point. The reasonably similar conduct alleged here is not Defendant's legal exercise of immigration laws – it is the illegal conduct in which Defendant engaged. As addressed below, IIED and negligence claims for abduction and separation of a child can be brought against <u>any</u> party if they meet the elements of those claims. Such conduct has a reasonably similar analog in the private sector.

There is no categorical bar on Plaintiffs' claims solely because they seek redress for conduct that implicates enforcement of immigration or criminal laws. Plaintiffs' claims do not challenge the adjudication of immigration status nor do they challenge the government's authority to enforce immigration laws. Rather, the tortious conduct occurred when the government forcibly separated the family, prevented them from speaking to each other, and refused to reunite the family at any time. [ECF No. 1, ¶¶37, 52-87]. The private analog does not bar such claims.

B.  <u>Under New Mexico law, a private person could be sued for IIED or negligence under reasonably similar circumstances.</u>

Moreover, Plaintiffs in this case seek recovery for the physical and emotional damages that resulted from DHS agents' deliberately cruel treatment of removing Erick and Mino from their

---

[5] The court in *S.E.B.M.* is one of the only courts in the country to find that the private analog bars a separation lawsuit; however, as it pertains to the IIED claim, it did so under a different theory – that the defendant's agents' conduct was privileged. 2023 WL 2383784, at *7-8. In Defendant's motion to dismiss in this case, that theory is not included in Defendant's argument regarding the private analog exception but is argued in Defendant's motion for dismissal under Rule 12(b)(6) which is addressed below.

mother using misleading statements. [*Id.*]. They did so without explanation or warning and denied them communication with one another afterwards. [Id. at ¶¶61-62, 65, 71-72].

In New Mexico, an IIED claim may be brought for similar conduct. Taking into account the fact that there are differences between the way in which the government and a private person operate, *In re FEMA,* 668 F.3d at 287, New Mexico law has long determined that an IIED claim may be brought where a plaintiff can establish that: (1) extreme and outrageous conduct; (2) intentionally or recklessly causes; (3) severe emotional distress to another; and (4) there exists a causal connection between the conduct and the distress. *Trujillo v. N. Rio Arriba Elec. Coop., Inc.*, 2002–NMSC–004, ¶ 25, 131 N.M. 607. *See also Restatement (Second) of Torts* § 46 (1965).

New Mexico courts have recognized that forcibly taking physical custody of a child away from a parent who has legal custody over that child is sufficiently extreme and outrageous and can form the basis for an IIED claim. *Hakkila v. Hakkila,* 1991-NMCA-029, ¶ 23, 112 N.M. 172 (establishing the limits of an IIED claim in the context of a marriage but implicating that "child snatching" would cross such a line and be subject to IIED liability).[6]

This is in line with other jurisdictions. *See*, *e.g*., *Eberle v. Adams*, 73 S.W.3d 322, 337 (Tex. App. 2001) (upholding a jury award for IIED, interference with possessory interest, and conspiracy for the unlawful separation of a child from its parent); *Silcott v. Oglesby*, 721 S.W.2d 290, 292 (Tex. 1986) (holding parents may recover damages for mental suffering caused by abduction of a minor child without a showing of actual physical injury when the tort was willful or intentional).

---

[6] The court in *S.E.B.M.* acknowledges that *Hakkila* establishes that "certain conduct affecting family relations, especially children, can be so extreme and outrageous that plaintiffs are allowed to sue" under an IIED claim. *S.E.B.M.,* 2023 WL 2383784, at *7. The court however, goes on to argue that regardless of the outrageousness of the Government's actions, it is privileged. That argument is addressed in response to the Defendant's Rule 12(b)(6) argument below.

A court in this District has also found that a similar claim for IIED (under Texas law) premised on the government's separation of families is not barred by the private person analog requirement. *A.E.S.E.,* 2022 WL 4289930, *14-15. Other circuits have also rejected this argument based on IIED claims in other states. *See, e.g., C.M.,* 2020 WL 1698191, at *2 (recognizing that an Arizona-based IIED claim is not defeated by the private analog exception where the factual allegations "suggest that the government's separation of families was motivated by malice.").

Similarly, New Mexico law imputes liability on private actors or entities when they assume the care of a person and act negligently in the placement of that person. Private actors who have placed one in custodial care have a duty to exercise reasonable care for the protection of the health of that person. *See, e.g., City of Belen v. Harrell*, 1979-NMSC-081, ¶ 15, 93 N.M. 601. *See also Tilga v. United States,* No. CV 14256 JAP/RHS, 2014 WL 12783121, at *8 (D.N.M. Dec. 5, 2014) (finding that claim could proceed under the FTCA based on negligence in causing harm in the care of federal inmates in New Mexico). Such negligence is also analogous to a claim against a "private school not having procedures in place to identify a young child's potential health problems," and "a parent sending his or her child to a dangerous place or placing the child in a dangerous situation." *Coffey v. United States,* 870 F.Supp. 2d 1202, 1235-40 (D.N.M. 2012); *D.J.C.V. v. United States,* 605 F.Supp. 3d at 602 (finding private analog to negligence cause of action in New York where it is alleged that "Government agents violated their duty to act with ordinary care towards them by separating parent and child and preventing them from communicating."); *Young v. Huntsville Hosp.,* 595 So.2d 1386, 1388 (Ala. 1992) (finding under negligence cause of action in Alabama that hospital can be found liable for negligence for the harms resulting from an intentional tort of a third party because of the special relationship duty that the hospital has to protect the patient while hospitalized).

Defendant may respond that the court in *S.E.B.M.* held differently with regards to a negligence claim in the context of forced separation. Upon scrutiny, though, the court in *S.E.B.M.* incorrectly narrowed the scope of the duty question for the plaintiff's negligence claim in that case. It first argued that the above cases are inapposite because the plaintiff "does not allege that she was physically unsafe, only that she was physically separate from family." 2023 WL 2383784, at *9. However, in the next sentence, the court in *S.E.B.M.* appeared to acknowledge that such a position was unsafe when it stated that "there is no doubt that extended physical separation from a parent or relative at that age is psychologically harmful." *Id.* Forcing children and their mother into a years-long separation violates a duty to protect persons under an entity's care to whom the entity owes a special relationship. *See A.I.I.L.*, 2022 WL 992543, at *6 (comparing family separation to a nursing facility's negligence where employees breach their duty of care to ensure the safety of persons at that facility).

The court in *S.E.B.M.* then stated that, even if a duty existed, "New Mexico law bars recovery in negligence for purely emotional harm." *Id.* Here, Plaintiffs allege far more than purely emotional harm – they cite numerous instances of physical manifestations of the significant harm to <u>all</u> parties after a forced family separation. [ECF No. 1, ¶¶69, 75, 80-85, 99]. Moreover, the court in *S.E.B.M.* only addresses damages in the context of the tort of negligent infliction of emotional distress – a narrow tort applicable to bystanders of an event which was never pleaded in this case. 2023 WL 2383784, at *9. Here, Plaintiffs assert a general negligence claim and seek "pain and suffering," "past and future mental anguish," "past and future pecuniary loss," and "past and future loss of companionship" (loss of consortium)." [ECF No. 1, ¶99]. New Mexico law unequivocally permits recovery of damages for emotional distress that is accompanied by "loss of consortium," "intentional conduct," or "physical injury." *Castillo v. Cty. of Las Vegas,* 2008-

NMCA-141, ¶ 22, 145 N.M. 205; *Higgins v. Hermes,* 1976-NMCA-066, ¶ 7, 89 N.M. 379 (finding that "pain and suffering" is "permitted for physical pain, nervousness, grief, anxiety, worry and shock."). Plaintiffs' request for emotional harm is accompanied by all three. Therefore, a private analog exists.

Plaintiffs bring negligence and IIED claims not on the basis of Defendant's enforcement of "federal criminal and immigration laws," [ECF No. 13, p. 19-20], but on the basis of Defendant's forced separation of the children and mistreatment following that separation (failing to let the family members talk by phone, separating them for extended periods of time, failing to reunify them, etc.). Because New Mexico law would support such claims against private persons or entities, the private person analog does not bar these claims.

## V.     Plaintiff has alleged a plausible claim for IIED against Defendant which is not subject to dismissal under Fed. R. Civ. P. 12(b)(6).

Finally, Defendant challenges Plaintiffs' IIED claim under the Rule 12(b)(6) standard because – it argues – the alleged misconduct was privileged. The parties agree that New Mexico law governs Defendant's tortious conduct in this case. [ECF No. 13, p. 22-23].

Defendant does not contest that the conduct, as alleged, would be extreme and outrageous, that Plaintiff's mental distress from that conduct would be extreme and severe, or that there would be a causal connection between the Government's conduct and Plaintiffs' mental distress. [*Id.* at p. 23-24]. Defendant solely argues that an IIED claim cannot be contested because "the separation was legally permitted," therefore "it was privileged under New Mexico law." [*Id*].

Defendant reaches this conclusion by mischaracterizing the relevant facts at issue. Defendant claims that Plaintiffs are merely suing because of Defendant's decision to place minors Erick and Mino in ORR custody while their mother, Gonzales, was placed in custody for prosecution. [*Id.* at p. 24]. On the contrary, as the court in *D.A.* succinctly stated in similar

circumstances, the prosecution alleged was done as a "pretextual means of cruelly separating her

from her children and keeping them separated" to deter them and that, as alleged, Defendant

> took [the parent's] children away on short notice without giving her an opportunity
> to say goodbye, did not tell her where her children had been taken, and did not
> allow Plaintiffs to communicate for several weeks. Further, most of the forced
> separation occurred after [the mother's] brief incarceration. Plaintiffs suffer greatly
> from the trauma of these events. As such, these allegations state a plausible claim
> for IIED [under Texas state law].

2023 WL 2619167, at *16.

Plaintiffs allege almost identical facts here to those addressed by the court in *D.A.*

Defendant developed a plan to <u>use</u> prosecution as a primary mechanism for separating families.

[ECF No. 1, ¶¶20-31]. They allege that the purpose of this plan was to separate families – not

provide parents or children with information about their loved ones – and use that process to

immediately classify children as UACs so that they would have to take the children away and make

reunification a "practical impossibility." [*Id.* at ¶¶ 32-36]. Indeed, Plaintiffs allege that they were

subject to forced separation, misled as to how long they would be separated, and never reunified

even after Gonzales was back in civil detention. [*Id.* at ¶¶37, 52-64]. Plaintiffs allege that Gonzales

had little communication with her children for around a month and extremely limited

communication even after that. [*Id.* at ¶¶65-67]. As a result of these actions, Plaintiffs were

separated and suffered injuries for years. [*Id.* at ¶¶68-87].

Defendant references several sources to support its argument. None of them support

dismissal under Rule 12(b)(6). Defendant first cites *Baldonado v. El Paso Nat. Gas Co.,* 176 P.3d

277, 283 (N.M. 2008) and *Restatement (Second) of Torts* § 46 to support the idea that conduct that

is extreme and outrageous may be "privileged." [ECF No. 13, p. 23]. Defendant compares this

case to a landlord who threatens to evict a woman and her children who haven't paid rent. *Id.*

(citing *Restatement (Second) of Torts* § 46).

Again, as stated above, Plaintiffs' separation was, in fact, unconstitutional and violated federal law. *See, supra,* Sec. II.[7] The proper comparison is not to a "landlord threatening to evict" a mother with children because she has not paid the rent. [ECF No. 13, p. 23]. Rather, it is to an entity who "snatch[es]" a child from its parent." *Hakkila,* 1991-NMCA-029, at ¶ 23. The conduct alleged, taken together and taken as true, would violate law and would not be an authorized use of process even if one of the reasons for the separation, taken alone, is pretextually based on a legal process.

Defendant next cites *Galicia v. United States,* No. CV 13-0105 MCA/LAM, 2015 WL 12696086, at *2 (D.N.M. Feb. 24, 2015). The court in that case rejected an IIED claim that specifically challenged a single traffic stop and removal from the country. *Id.* However, in that case, the court did not address allegations of other violations of law – as exist here. *Id.* There do not appear to have been allegations that the traffic stop and removal were done unreasonably. *Id.* Moreover, the court in that case found that the conduct alleged was not outrageous. *Id.* Here, several federal courts reviewing almost identical allegations have found that the Government's forceful separation of families would be considered "brutal," offensive," and "shocks the conscience." *Ms. L,* 302 F.Supp.3d at 1167.

It is for this reason that so many courts have rejected Defendant's attempt to isolate legal reasoning behind prosecution of immigration laws and take it out of the context of Defendant's overall illegal activity. As the Court in *Ms. L* stated about the government's family separation policy – including the scheme to use prosecution as a justification for separating children:

> These allegations sufficiently describe government conduct that arbitrarily tears at the sacred bond between parent and child, and is emblematic of the "exercise of power without any reasonable justification in the service of an otherwise legitimate governmental objective[.]" *Lewis,* 523 U.S. at 846, 118 S.Ct. 1708. Such conduct, if true, as it is assumed to be on the present motion, is brutal, offensive, and fails to comport with traditional notions of fair play and decency. At a minimum, the facts

---

[7] *See also, A.E.S.E.,* 2022 WL 4289930, at *14 (finding private actor analog for IIED claim in family separation case because the government's conduct "was violative of the *Flores* Agreement and TEDS Standards").

alleged are sufficient to show the government conduct at issue "shocks the conscience" and violates Plaintiffs' constitutional right to family integrity.

*Ms. L,* 310 F.Supp. 3d at 1166-1167 (internal citations omitted). *See also D.J.C.V.,* 605 F. Supp. 3d at 601 (finding under similar state law that "because a private individual could be held liable for separating a parent from a child, barring the two from communicating, and doing so in a way calculated to cause maximum distress, the Government's motion to dismiss based on the lack of a private analog is denied as to IIED…").

Finally, even if privilege to prosecute shielded the Government from liability for the act of separation, it cannot shield Defendant's actions when it failed to reunify Gonzales with her children after she was out of Marshals custody or Defendant's refusal to let Plaintiffs speak to each other or know what they were doing for long periods of time. *See, e.g., E.S.M. v. United States,* No. CV-21-00029-TUC-JAS, 2022 WL 11729644, at \*3 (D. Ariz. Oct. 20, 2022) (permitting the pursuit of claims for torts that were committed during otherwise-legal incarceration).

## V.    In the alternative, Plaintiffs seek leave to amend the Complaint.

Finally, if the Court feels that Plaintiffs have not properly pleaded sufficient facts to support any of the claims above, Plaintiffs seeks leave to amend to correct any deficiencies perceived by the Court. *See Burleson v. ENMR-Plateau Telephone Co-op.,* No. Civ. 05-0073 JBKBM, 2005 WL 3664299, at \*1 (D.N.M. September 23, 2005)("leave should be freely granted when justice so requires."). Specifically, though Plaintiffs believe their pleading is sufficient under both Rule 12(b)(1) and 12(b)(6), they could amend to include further detail about the constitutional provisions violated and the specific provisions of the *Flores* Agreement and TEDS that provided federal directives to the Government on how to engage Plaintiffs in these circumstances. Given the extremely early stage of litigation, and a lack of any prior amendments, there is no prejudice to any party nor is there a dilatory motive, and there is no evidence that amendment would be

futile. *Lucero v. Board of Directors of Jemez Mountains Cooperative, Inc.,* 495 F. Supp.3d 1135, 1184 (D.N.M. 2020).

## CONCLUSION

For the above reasons, Plaintiffs respectfully request that this Court deny Defendant's Motion in its entirety.

Dated: July 26, 2023                    Respectfully submitted,

                                        COYLE & BENOIT, PLLC
                                        2515 N. Stanton St.
                                        El Paso, Texas 79902
                                        (915) 532-5544
                                        Fax (915) 532-5566

                    By:     */s/ Christopher Benoit*
                            CHRISTOPHER BENOIT
                            N.M. Bar No. 150497
                            chris@coylefirm.com

                            ***Attorney for Plaintiffs***

## CERTIFICATE OF SERVICE

I hereby certify that on July 26, 2023 I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system which will send notification of such filing to all counsel of record.

                            */s/ Christopher Benoit*
                            CHRISTOPHER BENOIT

31